THOMAS AINSWORTH, Appellant, *v.* COMBINED INSURANCE COMPANY OF AMERICA, Respondent.

No. 17625

May 19, 1989 774 P.2d 1003

*Peter Chase Neumann,* Reno; *Bradley & Drendel,* Reno, for Appellant.

*Mortimer, Sourwine, Mousel, Sloane & Knobel,* Reno; *Lionel Sawyer & Collins,* and *M. Kristina Pickering* and *Steve Morris,* Las Vegas, *Geoffrey C. Hazard, Jr.,* New Haven, Connecticut, for Respondent.

*Laura FitzSimmons,* Carson City, for Amicus Curiae.

## OPINION

*Per Curiam:*

On October 26, 1988, in an opinion authored by former CHIEF JUSTICE E. M. GUNDERSON,[1] this court unanimously concluded that substantial evidence supported the jury's assessment of $5,939,500 in punitive damages against respondent Combined Insurance Company of America (Combined). Accordingly, we reversed the district court's judgment notwithstanding the jury's verdict, reinstated the jury's assessment of punitive damages against Combined, and affirmed the district court's denial of Combined's motion for a new trial. *See* Ainsworth v. Combined Ins. Co., 104 Nev. 587, 763 P.2d 673 (1988).

Pursuant to NRAP 40, both parties to this appeal subsequently filed timely petitions for rehearing challenging different facets of this court's decision. Thereafter, on December 30, 1988, forty-six days after the time to file a petition for rehearing had expired

---

[1]After serving on this court for eighteen years, CHIEF JUSTICE GUNDERSON did not seek re-election to a fourth term of office. His elected term formally expired on January 2, 1989, when then Justice-elect Rose succeeded to that office. *See* Nev. Const. art. 6, § 3. Thus, neither JUSTICE ROSE nor former CHIEF JUSTICE GUNDERSON participated in the court's deliberations on the petitions for rehearing and the motions resolved in this opinion.

under NRAP 40(a), and on the last judicial day preceding CHIEF JUSTICE GUNDERSON's official retirement as an elected justice of this court, Combined filed a motion alleging that then CHIEF JUSTICE GUNDERSON was disqualified from any participation in this appeal. Combined's motion, therefore, requests this court to issue an order (1) disqualifying former CHIEF JUSTICE GUNDERSON from any future participation in this matter, (2) vacating the opinion, and (3) scheduling reargument on the merits of the appeal. On February 7, 1989, Combined also filed a "supplemental motion" seeking an evidentiary hearing and discovery on certain factual allegations relating to the issue of disqualification. Combined further supplemented its motions with papers asserting previously unraised allegations of impropriety on February 16, 1989. Appellant Ainsworth opposes both Combined's petition for rehearing and its motions respecting former CHIEF JUSTICE GUNDERSON's participation in this appeal. In addition, Ainsworth has requested this court to impose sanctions upon Combined and its counsel pursuant to NRCP 11 and NRAP 38 for abusing the appellate processes of this court.

On February 24, 1989, former CHIEF JUSTICE GUNDERSON filed a personal response to Combined's allegations challenging his prior participation in this appeal. Among other things, his response expresses the view that Combined's allegations of ethical impropriety constitute procedurally improper, belated attempts to obfuscate the issues, delay the final resolution of this matter, and abuse the appellate processes of this court.[2] Accord-

---

[2]In an effort to impose a degree of judicial decorum in these proceedings, and pending our consideration of the timeliness and procedural propriety of the various documents before us, CHIEF JUSTICE YOUNG entered orders on February 24, 1989, and March 10, 1989, directing "the clerk of this court to neither receive, nor file, any further papers in this matter unless the Chief Justice or Acting Chief Justice first has expressly granted a party leave to file such papers." Pursuant to those directives, Combined has requested leave of CHIEF JUSTICE YOUNG to file a reply primarily addressing former CHIEF JUSTICE GUNDERSON's personal response of February 24, 1989. We have carefully considered the matters set forth in Combined's latest proposed reply, and we conclude that, under the circumstances present here, Combined's reply may be made a part of the official record of this proceeding. See Component Systems v. District Court, 101 Nev. 76, 79 n.2, 692 P.2d 1296, 1299 (1985). Accordingly, we hereby direct the clerk of this court to file that document.

We observe, however, that sound judicial policy underlies the absence of any provisions in our rules permitting the filing of replies to oppositions to motions and petitions without the express leave of this court. See NRAP 27; NRAP 40. No litigant has an unqualified right to inundate a court with motions, supplements, errata, responses, exhibits and replies belatedly asserting arguments that it previously failed to raise. Nor do litigants have unfettered license to utilize such methods to manipulate judicial proceedings and unreasonably delay a final resolution of litigation. Moreover, although we have concluded that Combined's additional papers do not necessarily

ingly, former CHIEF JUSTICE GUNDERSON's response suggests that Combined's allegations respecting his prior participation in this appeal warrant summary rejection.

Having carefully considered all the papers and documents tendered in this matter, and for the reasons set forth below, we deny all the petitions and motions presently pending in this docket, with the above-noted exception of Combined's request for leave to file its latest proposed reply.

## I. *AINSWORTH'S PETITION FOR REHEARING*

In his petition for rehearing, Ainsworth requests reconsideration and clarification of footnote 2 of the opinion so as to permit him to collect post-judgment interest on the jury's award of punitive damages.[3] *See* Ainsworth v. Combined Ins. Co., 104 Nev. 587, 594, n.2, 763 P.2d 673, 677 (1988). The challenged footnote concluded that appellant was "not entitled to interest on the punitive damages award." *See* Ramada Inns v. Sharp, 101 Nev. 824, 711 P.2d 1 (1985). Further, it observed that Combined had previously tendered full payment of that portion of the judgment below awarding Ainsworth approximately $210,000 in policy benefits and compensatory damages. Thus, we held that Ainsworth was not entitled to the payment of any interest whatsoever on the judgment. The footnote clearly illustrates that we previously considered and rejected Ainsworth's contentions on appeal respecting his entitlement to interest. His similar contentions on rehearing, therefore, constitute improper reargument under NRAP 40(c)(1).[4]

---

prejudice the opposing party or further burden this court with additional improper argument, we specifically reject Combined's contention that it has a due process right to reply to what it characterizes as former CHIEF JUSTICE GUNDERSON's "governmental attack." *Cf.* Gardiner v. A.H. Robins Co., Inc., 747 F.2d 1180 (8th Cir. 1984). At the time his response was filed in this court, former CHIEF JUSTICE GUNDERSON had retired from his elected position on this court, and he was performing no judicial functions related to this appeal. Therefore, his response is not a judicial or governmental declaration; it is simply his personal response to publicly disclosed accusations tendered against him by Combined and its counsel.

[3] Ainsworth initially asserted these same arguments in a motion to amend the opinion. Combined contends that the motion is procedurally improper. Any perceived procedural errors arising out of the fact that Ainsworth initially raised these contentions by motion, were remedied and rendered moot when Ainsworth subsequently filed his timely petition for rehearing seeking the same relief. Accordingly, and in light of our decision denying Ainsworth's petition for rehearing, we also deny as moot Ainsworth's initial motion to amend.

[4] NRAP 40(c) provides:

(1) Matters presented in the briefs and oral arguments may not be

244

Ainsworth contends, however, that this court may have overlooked or misapprehended case law which is arguably favorable to his position. *See* Buck v. Burton, 768 F.2d 285 (8th Cir. 1985), *citing* Turner v. Japan Lines, Ltd., 702 F.2d 752 (9th Cir. 1983) (purpose of awarding interest to a party recovering money judgment is to compensate the wronged person for being deprived of the monetary value of the loss from the time of the loss to the payment of the money judgment). Additionally, Ainsworth now proposes that awards of post-judgment interest on judgments assessing punitive damages would promote substantial justice and deter frivolous appeals and other dilatory tactics by defendants who can afford to litigate such judgments endlessly. We disagree.

First, Ainsworth has raised these particular legal arguments for the first time on rehearing. Consequently, they constitute improper argument under NRAP 40(c)(1). Second, in Ramada Inns v. Sharp, 101 Nev. 824, 711 P.2d 1 (1985), we observed that the purposes underlying compensatory and punitive damages distinguish a plaintiff's entitlement to prejudgment interest on such awards. While compensatory damages are intended to *compensate* a wronged party, punitive damages are solely designed to punish and deter fraudulent, malicious or oppressive conduct. *See also* NRS 42.010. A plaintiff is therefore never entitled to punitive damages as a matter of right. Thus, in rejecting Ainsworth's arguments on appeal respecting his entitlement to interest, we applied our prior reasoning and holding in *Ramada Inns* to the question of *post-judgment* interest, and concluded that the purposes and policies underlying awards of punitive damages would not be furthered by an award of *any* interest in this case. The authorities Ainsworth has cited for the first time on rehearing do not alter our conclusion in this regard. Third, we have concluded that other more appropriate means are available to deter frivolous litigation and dilatory tactics. *See* NRCP 11; NRAP 38. In sum, this court did not misapprehend or overlook any material matters in this regard. Nor has Ainsworth presented any persuasive reasons demonstrating that a departure from our prior holding would "promote substantial justice." Accordingly, we deny Ainsworth's petition for rehearing. *See* NRAP 40(c).

---

reargued in the petition for rehearing, and no point may be raised for the first time on rehearing.

(2) The court may consider rehearings in the following circumstances:

(i) When it appears that the court has overlooked or misapprehended a material matter in the record or otherwise, or

(ii) In such other circumstances as will promote substantial justice.

## II. *COMBINED'S PETITION FOR REHEARING*

First, Combined contends that this court's opinion assumes material facts not found in the record and misstates others that are. Specifically, Combined complains that the opinion unfairly and inaccurately represents that, at the time Combined denied Ainsworth's first claim for benefits, it had reason to know from its review of the initial claims form that a doctor's statement respecting the cause of Ainsworth's stroke was nothing more than an "hypothesis." *See Ainsworth,* 104 Nev. at 589, 763 P.2d at 674. Combined correctly notes that the initial doctor's report contained in the first claims form submitted by Mrs. Ainsworth simply stated that a disease of the arteries was the cause of Ainsworth's stroke.[5] The claims form contained nothing to indicate that the doctor's initial report was merely an hypothesis. Nonetheless, it is undisputed that evidence was presented to Combined, after it had denied the first claim, indicating that the doctor had since concluded the stroke was the result of an accident, not a disease. Further, as Combined observed in its brief on appeal, the doctor himself later testified at trial that his initial report was pure speculation and an hypothesis. Our reference to the initial doctor's report as an "hypothesis," therefore, was ultimately factually accurate.[6] Thus, this court was adequately and accurately informed, and no material matter was misapprehended or overlooked in this regard. *See* NRAP 40(c). Consequently, we conclude that this contention does not form a proper basis for rehearing.

Combined further contends, however, that the opinion inaccurately states that "Combined sent [Mrs. Ainsworth] a third denial letter" prior to receiving the results of its medical consultant's second evaluation of the claim. *See Ainsworth,* 104 Nev. at 589, 763 P.2d at 674. We concede the opinion misstates this fact, and we hasten to correct our inaccurate summary of that sequence of events. As Combined observes, the undisputed testimony on this

---

[5]Specifically, the doctor's report stated, "Stroke occurred from disruption of atheromatous plaque during angiogram."

[6]During the oral argument of this appeal, JUSTICE STEFFEN specifically focused on this issue and questioned appellant's counsel in detail as to whether Combined's initial denial of the claim was in fact reasonably based on the doctor's first report. As that colloquy clearly reveals, and as our opinion reflects, Combined's subsequent failure to investigate and evaluate the claim fairly and its subsequent denials of the Ainsworths' repeated requests for reconsideration, after it had reason to know of Ainsworth's dire need for benefits, constitute the conduct that supports the jury's punitive damage award.

subject at trial indicates that, although Combined's adjuster prepared and dated the third denial letter prior to Combined's receipt of its medical consultant's second evaluation, the letter was apparently not mailed to Ainsworth until *after* Combined's medical consultant completed his second evaluation.

Although the opinion does misstate this sequence of events, we are not persuaded that this court thereby overlooked a material matter, or labored under a material misapprehension. *See* NRAP 40(c). The opinion otherwise accurately sets forth substantial evidence supporting the jury's verdict. Accordingly, this matter does not alter our consensus that the record as a whole provides substantial support for the jury's verdict, and we therefore conclude that rehearing is not warranted on this basis.

Second, Combined argues that, in the opinion, this court overlooked and omitted facts favoring Combined's position that it did not act in a manner deserving of punitive damages. In its latest reply, Combined further complains that this court did not give appropriate deference to the district court's view of the evidence. Specifically, Combined argues that this court:

> could only read about what the trial judge experienced in person, yet the Court concluded she was wrong in her view of the facts and law on punitive damages. *But see* Jeffers v. Bob Kaufman Machinery, 101 Nev. 684, 686-87, 707 P.2d 1153, 1154 (1985) (in considering a district court's decision to withdraw the issue of punitive damages from the jury, "we give deference to the district court's weighing of the evidence").

Combined's contentions, however, fail to recognize that, under the well-established standard of review governing appeals from judgments notwithstanding a jury's verdict, our primary focus was not with each and every fact before the jury favoring Combined's position, nor was our primary focus with the district judge's view of the facts. Rather, our main concern was with whether the jury's view of the facts was supported by *any substantial evidence in the record. See* Jacobson v. Manfredi, 100 Nev. 226, 679 P.2d 251 (1984). Although in *Jeffers* we gave deference to the district court's weighing of the evidence, where the district court had withdrawn the issue of punitive damages from the jury *during the trial,* we also reversed the district court's separate *post-trial* grant of a judgment notwithstanding the jury's verdict on the underlying cause of action. In so doing, we explained that the standard governing our review of an order granting a motion for judgment n.o.v. compels us to view the evidence that was before the jury "in a light most favorable to the nonmovant." We further observed that, in reviewing a grant of a

judgment n.o.v., the nonmovant must be given "'the benefit of every reasonable inference' from any substantial evidence supporting the verdict." *Jeffers,* 101 Nev. at 685, 707 P.2d at 1154. Additionally, we have previously held that, in passing upon a motion for judgment n.o.v., "neither the credibility of the witnesses nor the weight of the evidence may be considered," and the district court "may only grant the motion if the evidence was such that 'reasonable men would have necessarily reached a different conclusion.'" *See* Wilkes v. Anderson, 100 Nev. 433, 434, 683 P.2d 35 (1984).

Similarly, as our opinion in *Ainsworth* clearly states, our review of the evidence in this record was guided by this standard of review. *See Ainsworth,* 104 Nev. at 590, 763 P.2d at 675. Former CHIEF JUSTICE GUNDERSON, therefore, quite properly confined our opinion's recital of the facts to the substantial evidence in the record supporting the jury's verdict. Contrary to Combined's contention, we did not thereby unfairly resolve the evidence against Combined. We simply reviewed *all the evidence* in the light most favorable to Ainsworth, as we are required to do under the pertinent standard of review. We further considered all the pertinent facts and contentions raised by the parties before issuing our opinion reversing the district court's order. Therefore, we conclude rehearing is unwarranted on this basis as well.

Third, Combined alleges that the opinion "finds Combined guilty of oppression for having written and interpreted the policy as it did." Combined further asserts that the case we cited for this alleged "finding" did not involve punitive damages and allegedly supports Combined's position. *See Ainsworth,* 104 Nev. at 592, 763 P.2d at 676, *citing* Catania v. State Farm Life Ins. Co., 95 Nev. 532, 598 P.2d 631 (1979). As Ainsworth responds, however, this court did not "find" Combined guilty of oppression, *the jury did.* We merely held that substantial evidence supported the jury's verdict. The opinion simply does not hold that the policy language itself was evidence of oppression. Rather, it observes that the Ainsworths were entitled to have the policy language applied as the average man would understand it. The *Catania* case is appropriate support for that proposition. Consequently, not only do Combined's contentions in this regard misstate our primary holding and analysis, they completely fail to demonstrate competent grounds for rehearing.

Fourth, Combined alleges that this court announced a "new standard" for punitive damages and that the "new standard" should only be applied prospectively, if at all. Contrary to Combined's contention, however, we announced no new standards, nor did we hold, as Combined asserts, that proof sufficient to establish bad faith will, without more, also support an award of

punitive damages.[7] Rather, in addition to the evidence supporting the jury's finding of bad faith, which Combined did not contest on appeal, we observed that the record also contained substantial evidence that "the Ainsworths were in desperate need of funds, and that Combined had reason to know of their dire circumstances." *Ainsworth*, 104 Nev. at 591, 763 P.2d at 676. For example, the record evidenced that "Combined knew . . . Thomas Ainsworth was a 59-year old male who had suffered a stroke and was comatose for seven days," and that "five times within eighteen months, the insured's wife requested payment, indicating clearly that the policy benefits . . . were urgently needed." *Id.* at 591, 763 P.2d at 675. Moreover, Combined's repeated statements to the Ainsworths that it had given careful consideration to the claim were belied by substantial evidence in the record indicating that, instead, its investigation of the claim was sadly inadequate.

Where, as here, substantial evidence indicates that an insurer knowingly refused payment of a valid claim for urgently needed policy benefits in bad faith, and the insurer not only knew the claimant was in dire need of those benefits, but also had reason to know that it was probable that the claimant would suffer unjust hardship if deprived of those benefits, in our view, a finding of oppression is amply justified.[8] As the opinion points out, our

---

[7]It could be argued, however, that an insurer's bad faith refusal to honor claims under health, accident and life policies is *per se* tantamount to oppression. People place inordinate reliance on the integrity of insurance companies to provide them the security for which they have bargained and paid. In the instant case, the Ainsworths had faithfully paid their premiums to Combined for thirteen years under the belief that if and when an accident occurred, they would enjoy the financial security they expected their policy to provide them. Instead, Combined made every effort to convince the Ainsworths that they were not entitled to their policy benefits. Perhaps most egregiously, Combined's agents attempted to convince the Ainsworths that Combined had diligently sought to validate and honor their claim, but could not do so because the event upon which the claim was based was not covered by the policy. In many other instances of bad faith denials, disappointed, mistreated insureds are no longer insurable and thus unable to obtain coverage from other, more responsible insurance companies.

[8]As our prior opinion in this matter noted, an insurer like Combined has a special relationship with its insureds which is distinguishable from the relationship between parties to ordinary contracts. This special relationship exists in part because, as insurers are well aware, consumers contract for insurance to gain protection, peace of mind and security. *See* Fletcher v. Western National Life Insurance Co., 89 Cal.Rptr. 78, 95 (Cal.Ct.App. 1970); *see also* K Mart Corp. v. Ponsock, 103 Nev. 39, 732 P.2d 1364 (1987). In addition to the jury's uncontested finding that Combined intentionally refused to pay the valid policy claim in bad faith, the record manifestly supports a legitimate inference that Combined had knowledge that its refusal

previous decision in Jeep Corporation v. Murray, 101 Nev. 640, 650, 708 P.2d 297, 304 (1985), clearly indicates that "oppression," sufficient to warrant an award of punitive damages under NRS 42.010, "is present where the plaintiff has been subjected to 'cruel and unjust hardship in conscious disregard of his rights.'" *Ainsworth,* 104 Nev. at 590-91, 763 P.2d at 675. Thus, once again we observe, there was not only substantial evidence supporting the jury's uncontested finding that Combined processed the claim in "bad faith" and in conscious disregard of Ainsworth's clear right to the policy benefits, but there was also substantial evidence supporting a finding that, in so doing, Combined *consciously* and deliberately attempted to pressure the Ainsworths into abandoning their rightful claim, and, thereby, subjected them "to cruel and unjust hardship." Therefore, we applied no "new standard" respecting the sufficiency of the evidence required to support awards of punitive damages. *See also* Roth v. Shell Oil Company, 185 Cal.App.2d 676, 682 (Cal.App. 1960). Accordingly, we conclude rehearing is unwarranted on this basis.

Fifth, Combined asserts that rehearing is warranted because the amount of punitive damages is excessive. In the papers before us, Combined frequently complains that the punitive damage award is over six times greater than any other such award previously affirmed by this court. Combined further objects to our consideration of the fact that the award constitutes only .4 percent of its 1985 total assets. It argues that the award represents more than 400 percent of the "total revenues Combined derived from its operations in Nevada in 1986," and that assessing punitive damages on the basis of its "policyholder reserves . . . is like assessing punitive damages against a bank based on total deposits, as if the depositors' money were the bank's." Finally, Combined also criticizes the opinion's application of the factors we previously set forth in Ace Truck v. Kahn, 103 Nev. 503, 746 P.2d 132 (1987), as appropriate guidelines upon which to assess the excessiveness of an award of punitive damages. According to Combined, our opinion is "irreconcilably inconsistent" with *Ace Truck* because it allegedly revives the old "financial annihilation" test and the "shock the conscience rule" that *Ace Truck* allegedly rejected. We disagree.

Initially, we acknowledge that the jury's verdict of approximately $6,000,000 is considerable. We note, however, that in

---

to pay would substantially and adversely affect Ainsworth's comfort, security, peace of mind and well-being. In our view, the finding of bad faith, coupled with Combined's course of conduct and other evidence described in the opinion, supports a finding of oppression.

spite of the considerable size of the verdict, Combined's counsel did not seriously attempt to present on appeal a factually persuasive or legally comprehensive argument that the verdict was so excessive as to warrant a remand or remittitur. To the contrary, counsel essentially proceeded on an "all or nothing" theory that included no particulars concerning the excessiveness of the punitive award. Such particulars were presented for the first time in Combined's petition for rehearing. In any event, Combined does not now raise any concerns that we have misapprehended or overlooked, or that we previously failed to consider carefully.[9] NRAP 40(c).

Additionally, the factors we considered in our evaluation of the verdict are far from inconsistent with the guidelines set forth in *Ace Truck*. As we stated in *Ace Truck*, as well as in our previous opinion in this case, the financial position of the defendant remains a relevant circumstance in evaluating excessiveness. Under our holding in *Ace Truck*, we may still appropriately consider "any circumstances which relate to the limits of punishment and deterrence that can be properly imposed in a given case." *Ace Truck*, 103 Nev. at 510, 746 P.2d at 137. Thus, we appropriately considered that the $6,000,000 verdict was only .4 percent of Combined's total 1985 assets in concluding that the verdict was not excessive. Further, we properly evaluated whether Combined's financial position and whether the nature of its misconduct warranted an award sufficient to cause it real

---

[9]This court issued its opinion in Ace Truck v. Kahn, 103 Nev. 503, 746 P.2d 132 (1987), on November 30, 1987, six months after the *Ainsworth* appeal was orally argued, but nearly one year before our opinion in *Ainsworth* was issued. We nonetheless considered it appropriate to analyze the size of the verdict in this case under the standards announced in *Ace Truck*. Further, following the issuance of the *Ace Truck* opinion, the parties were permitted to file supplemental briefs on appeal. Nonetheless, Combined still did not address in a meaningful way the specific factors set forth in *Ace Truck*. As noted, we deem it of some significance that Combined did not attempt to present a compelling, factually complete and legally tenable argument on appeal addressing the propriety of a substantial reduction in the award. Although Combined's briefs asserted in a superficial and cursory manner that the verdict "shocked the conscience," that the jury received no proper guidance on the question of damages, and that the jury "only heard counsel's impassioned argument that damages would be assessed as a percentage of the Combined's net worth," the major focus of Combined's argument in its briefs on appeal was that the verdict constituted an excessive fine or a violation of due process under the constitution. Further, Combined's briefs made only passing reference to this court's inherent authority to issue a remittitur of the verdict in requesting such action as an alternative to reversal or remand. At oral argument, Combined's counsel made no reference whatsoever to these issues. This court may have been much more receptive to Combined's contentions, if they had been cogently presented on appeal rather than belatedly asserted in a petition for rehearing.

concern if it was to be deterred from similar future misconduct. Similarly, because the "shock the conscience rule" entails an evaluation of the "magnitude of the award as related to the misconduct," such an evaluation is entirely consistent with the views expressed in *Ace Truck. Id.* at 507, 746 P.2d at 135. Thus, Combined's allegation that the *Ainsworth* opinion "revives" the "financial annihilation test" and the "shock the conscience rule" that *Ace Truck* "rejected," indicates that Combined has misconstrued the nature of our holdings in both cases.

Moreover, we note that because our opinion in *Ace Truck* was issued after this appeal was briefed and argued, it was entirely proper for this court thoroughly to analyze the verdict in light of the numerous guidelines announced in *Ace Truck,* as well as in accordance with a more traditional analysis. In sum, we were not persuaded under any of those guidelines that the verdict in this case was unwarranted. Combined's belated contentions on rehearing, therefore, relate to matters that we have previously, thoroughly considered—notwithstanding Combined's failure to focus on them—and we have not altered our prior consensus. Accordingly, we conclude that Combined's contentions in this regard state no competent grounds for rehearing.

 ██

Finally, Combined alleges for the first time on rehearing that Ainsworth's counsel *may have* improperly orchestrated communications to Combined, prior to the filing of this action, that did nothing to inform Combined that it was mistakenly denying the claims. Specifically, Combined asserts that Ainsworth's counsel *may have* failed to identify himself and "set out his role and knowledge of the facts" in an attempt to "set-up" a claim against Combined for bad faith and punitive damages. Combined further asserts that Ainsworth's counsel's conduct should be fully explored in an evidentiary hearing and that, therefore, this court's "opinion should be withdrawn and the matter remanded to the district court for further proceedings pursuant to NRCP 60(b)." We again disagree.

Combined's allegations are entirely speculative. Further, the scant factual assertions submitted in support of these allegations were clearly known to Combined prior to or during the course of the proceedings below. As counsel for Ainsworth observes, Combined had every opportunity to raise these concerns in the district court during or after the trial, but failed to do so. Moreover, it was *Combined's responsibility* to evaluate and pay the claim fairly, in good faith and in a manner free of malice or oppression, not Ainsworth's counsel's responsibility. We conclude, therefore, that Combined's contentions in this regard are not only improperly raised for the first time on rehearing, but are also wholly

insufficient to support any reasonable inference of impropriety on the part of Ainsworth's counsel.[10]

In light of the above, we hereby deny Combined's petition for rehearing. NRAP 40(c).

### III. COMBINED'S MOTIONS CHALLENGING FORMER CHIEF JUSTICE GUNDERSON'S PARTICIPATION IN THIS APPEAL

On December 30, 1988, the last judicial day of 1988, Combined filed a motion in this court stating in part:

> This motion . . . requests CHIEF JUSTICE GUNDERSON to disqualify himself from participating in this appeal from this time forward. In the alternative, in the event CHIEF JUSTICE GUNDERSON declines to voluntarily step aside, the motion requests the Court to disqualify him. In either event, the motion also asks the Court to vacate its opinion in this appeal and schedule re-argument on the merits at the earliest time convenient to the Court.

As counsel for Combined were presumably well-aware, however, on January 2, 1989, the very next judicial day, Justice-Elect Rose officially succeeded to former CHIEF JUSTICE GUNDERSON's seat on the Nevada Supreme Court. See Nev. Const. art. 6, § 3 (justices of supreme court hold office . . . from and including the first Monday of January next succeeding their election). Although upon his retirement CHIEF JUSTICE GUNDERSON was duly commissioned a Senior Justice of the Nevada Court System, he may not now lawfully participate in any decision of this court except upon an order of the Chief Justice specifically assigning him to sit temporarily in his capacity as a Senior Justice. See Nev. Const. art. 6, § 19(1)(a) and 19(1)(c); SCR 10; see also Fox v. Fox, 84 Nev. 368, 441 P.2d 678 (1968) (decree filed by a district judge after the expiration of his term was invalid); Lagrange Constr. v. Del E. Webb Corp., 83 Nev. 524, 435 P.2d 515 (1967) (judge whose term had expired had no power or authority to perform any judicial function). Without a specific order of assignment, SENIOR JUSTICE GUNDERSON may perform only "routine ministerial acts." SCR 10(3). No order directing SENIOR JUSTICE GUNDERSON to participate in any judicial capacity in this matter has been entered, and Combined has cited no authority in support of its assertion that SENIOR JUSTICE GUNDERSON's disqualification is

---

[10]Counsel for Ainsworth denies Combined's allegations as "absurd, unfounded and insulting," and has moved to strike this particular portion of Combined's argument. In light of our conclusion that Combined's petition for rehearing is without merit, we deny Ainsworth's motion as moot.

*presently* required or necessary under these circumstances. Accordingly, we conclude that insofar as Combined's motion seeks the voluntary recusal or disqualification of SENIOR JUSTICE GUNDERSON from any present participation in this matter, the motion is a nullity. At the very least, that issue does not presently present an "actual controversy," and has been rendered moot by the expiration of his elected term of office. *See generally* Nev. Const. art. 6, § 4; Boulet v. City of Las Vegas, 96 Nev. 611, 614 P.2d 8 (1980).

Combined also argues, however, that former CHIEF JUSTICE GUNDERSON's participation in these proceedings was improper and that vacatur and reargument are required because (1) under NRS 1.225, he entertained a disqualifying bias or prejudice for and against the litigants and their counsel; (2) under the Nevada Code of Judicial Conduct, his impartiality was reasonably and sufficiently subject to question so as to create a disqualifying appearance of impropriety; and (3) under the due process clause of the constitution, his alleged partiality denied Combined its right to a fair hearing before an impartial tribunal. Combined asserts that, under these provisions, the former Chief Justice should have disqualified himself from any participation in this matter or disclosed certain facts to Combined's counsel prior to taking part in this appeal. We disagree. For the reasons which follow, we conclude vacatur and reargument are unwarranted as a matter of law because none of the factual allegations Combined has asserted in support of these contentions constitute competent grounds for disqualification under our statutes, our rules of judicial conduct, or the constitution.[11] *See* In re Petition to Recall Dunleavy, 104 Nev. 784, 769 P.2d 1271 (1988); Goldman v. Bryan, 104 Nev. 644, 764 P.2d 1296 (1988); *see also* Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 108 S.Ct. 2194 (1988); Aetna Life Insurance Co. v. Lavoie, 475 U.S. 813 (1986).

A. *Combined's allegations respecting procedural rulings, the oral argument and former Chief Justice Gunderson's response of February 24, 1989.*

First, Combined contends that this appeal was handled in a manner that was contrary to this court's "normal procedure." Combined asserts that these "procedural irregularities" evidence former CHIEF JUSTICE GUNDERSON's bias or create a disqualifying appearance of impropriety. Specifically, Combined complains that Ainsworth's counsel properly perfected this appeal only after

---

[11]The pertinent provisions of NRS 1.225 and the Canons of the Nevada Code of Judicial Conduct are set forth in an appendix to this opinion.

this court issued two *sue sponte* orders in December of 1986, advising counsel that the appeal was jurisdictionally deficient and advising counsel how to correct the deficiency. Next, Combined alleges that, contrary to the court's normal procedure, the former Chief Justice personally "intervened" and entered an order on April 22, 1987, directing the clerk to schedule the appeal on the court's "first available argument calendar." Combined also complains that this court denied its subsequent motion of May 18, 1987, seeking a postponement of the oral argument, with "undue expedition." Combined's motion sought to stay the oral argument in this matter pending the United States Supreme Court's resolution of constitutional questions in an unrelated case that might have had a bearing on the issues presented in this appeal. *See* Bankers Life and Cas. Co. v. Crenshaw, 486 U.S. 71, 108 S.Ct. 1645 (1988).

We observe, however, that the two orders issued by this court in December of 1986, were entered prior to the date that JUSTICE GUNDERSON became Chief Justice, and were not even signed by JUSTICE GUNDERSON. Although former CHIEF JUSTICE GUNDERSON did sign a third order, after he became Chief Justice, allowing this appeal to proceed, such orders advising counsel of jurisdictional defects revealed by our preliminary review of the records on appeal are by no means "contrary to this court's normal procedure." They are issued as a matter of course to insure that this court's jurisdiction to entertain an appeal has been properly invoked, and to insure that appeals are resolved on the merits whenever possible.[12] Further, former CHIEF JUSTICE GUNDERSON's order of April 22, 1987, directing the clerk to schedule oral argument on the next available calendar, was entered *in response to a motion* filed by Ainsworth requesting oral argument of this appeal. This court rarely denies such requests, and in granting them, it is commonplace for the Chief Justice to direct the clerk to schedule oral argument on the next available calendar. Thus, these procedural rulings were not contrary to this court's normal procedure, nor do they demonstrate any prejudice,

---

[12]For example, a similar order was issued by this court in April of 1988, in an unrelated appeal in which one of Combined's present co-counsel represents the appellants as counsel of record. Like the order signed by former CHIEF JUSTICE GUNDERSON in this case, our order in that unrelated case advised counsel that the appeal could proceed because counsel had properly cured a jurisdictional defect pursuant to the directives of an earlier order in which we called that defect to counsel's attention. Further, that order stated that this court had determined that oral argument was warranted and directed the clerk to schedule that appeal for oral argument on the court's "first available calendar." *See* United Fire Ins. Co. v. McClelland, Docket No. 18705 (order filed April 26, 1988). Quite clearly, therefore, counsel for Combined recklessly failed to investigate this court's policies and procedures before tendering the conclusory allegation that the rulings complained of were "contrary to normal procedure."

bias or appearance of impropriety stemming from an extrajudicial source. *See* Shepard v. State, 756 P.2d 597 (Okl.Crim.App. 1988) (judge's honest efforts to expedite trial do not demonstrate bias and are permissible so long as they do not operate to prejudice defendant's rights); *see also* In re Petition to Recall Dunleavy, 104 Nev. 784, 769 P.2d 1271 (1988) (neither NRS 1.225, nor the code of judicial conduct will permit allegations of bias, partially founded on a justice's performance of his official duties, to disqualify the justice; to do so would nullify the court's authority and permit manipulation of justice, as well as the court); United States v. Board of Sch. Com'rs, Indianapolis, Ind., 503 F.2d 68, 81 (7th Cir. 1974) (rulings and actions of a judge during the course of official judicial proceedings do not establish legally cognizable grounds for disqualification), *cert. denied,* 439 U.S. 824 (1978).

Moreover, this court's order of May 29, 1987, denying Combined's request for a postponement of the oral argument, concluded in part that "the United States Supreme Court may not reach any issue that is directly relevant to this case." As it turns out, that was precisely the result. *See* Bankers Life and Cas. Co. v. Crenshaw, 486 U.S. 71, 108 S.Ct. 1645 (1988) (Supreme Court did not reach insurer's claims that punitive damage award violated due process and other constitutional provisions because such claims were not raised and passed upon in state court). Therefore, Combined has not only failed to allege any legally cognizable grounds establishing bias or an appearance of impropriety, it has also failed to demonstrate that it suffered any prejudice from this court's procedural rulings. Accordingly, we conclude that Combined's contentions in this regard are entirely frivolous and warrant our summary rejection.[13]

---

[13]Combined also complains that this court improperly filed former Chief Justice Gunderson's response of February 24, 1989, because that document was not properly served on counsel for Combined pursuant to NRAP 25. In support of this assertion, Combined cites authorities supporting the proposition that a judge is a "party" to a proceeding involving the issue of that judge's disqualification. *See* Harvey v. Lewis, 158 N.W.2d 809 (Mich. Ct.App. 1968). We note, however, that Combined was notified of the filing of the response and no prejudice whatsoever to Combined's position is either alleged or apparent as a result of any failure to serve that document. Moreover, we note that, in spite of Combined's insistence that former Chief Justice Gunderson should be considered a "party" to these proceedings, counsel for Combined never served former Chief Justice Gunderson with *any* of the numerous papers that it has filed with the clerk of this court after his official retirement from his elected office. Any inference that this court has somehow unfairly treated Combined and its counsel is, therefore, wholly unreasonable.

It should also be noted that former Chief Justice Gunderson, who responded to Combined's accusations at the request of this court, was informed by the Clerk of the Court that service of his response was unnecessary because he was not a party, and the Clerk would supply notice of the

Second, Combined contends that former CHIEF JUSTICE GUN-
DERSON's participation in the oral argument of this appeal evi-
denced actual bias and prejudice or an appearance of bias and
prejudice against Combined and its counsel. In the initial motion
and in a statement in support of the motion,[14] counsel for Com-
bined asserted in conclusory terms that, during the oral argument
of this matter, the former Chief Justice evidenced ''a partisanship
inappropriate to the appellate judicial process.'' Specifically,
counsel complains that the former Chief Justice (1) ''openly
ridiculed'' and was uncivil and hostile to Combined and its
attorney; (2) ''acted not as a member of an appellate court but as
an advocate for the appellant''; (3) ''expressed the opinion that
Combined's very policy was an act of bad faith''; and (4)
expressed an ''animus'' that was not ''confined to Combined and
its counsel but seemingly reached the insurance industry as a
whole.'' In support of these conclusory accusations, Combined
relies upon a copy of the official reporter's audio recording of the
oral argument before this court.

We have carefully reviewed the official reporter's master ·
recording of the oral argument, which constitutes the formal
record of that hearing, and we conclude that counsel's ''state-
ments of mere conclusions'' are not only legally insufficient to
support Combined's motions, but are also belied by the tone,
tenor and substance of former CHIEF JUSTICE GUNDERSON'S

---

filing to the parties, which she did. NRAP 25(1)(b) requires service of all
papers filed by *parties*. This court has not had the occasion previously to
decide whether by reason of a motion to disqualify, the status of a participat-
ing justice or judge is transmogrified to that of a party. Although we have
substantial doubt that such a change occurs, we decline to decide the issue
because Combined has suffered no prejudice whatsoever from the lack of
service by or at the behest of former CHIEF JUSTICE GUNDERSON.

[14]The factual allegations in Combined's initial motion of December 30,
1988, were supported in part only by the *unsworn* statement of Combined's
counsel. Neither NRS 1.225 nor the Nevada Code of Judicial Conduct
presently provides that factual allegations in a motion to disqualify a supreme
court justice must be made upon affidavit. *Compare* NRS 1.235 (requiring
the filing of supporting affidavits in motions seeking disqualification of
district judges). We take this opportunity to note, however, that in our future
consideration of motions to disqualify a judge or justice, we shall deem it
appropriate to substantially discount factual allegations that are not supported
by sworn statements and that are not otherwise verifiable from the record
before us. Because we have not heretofore addressed this problem in a
published decision, and because Combined's factual allegations are other-
wise legally insufficient, we do not premise any of our conclusions in this
matter on counsel's initial failure to provide his sworn supporting affidavit,
nor is it necessary to address the effectiveness of counsel's subsequent
affidavit submitted in an attempt to remedy the motion's initial deficiency.

remarks. *See* Litinsky v. Querard, 683 P.2d 816, 818 (Colo. Ct.App. 1984) (to permit "statements of mere conclusions" of the pleader respecting a judge's alleged hostility at trial "to form the basis of a legally sufficient motion to disqualify would be to permit any party dissatisfied with the outcome of a trial to . . . create unwarranted delay and chaos"). In our view, former CHIEF JUSTICE GUNDERSON's remarks at oral argument, at the most, displayed his usual, well-known aggressive use of the Socratic method. Contrary to Combined's contentions, his questions directed to Combined's counsel were no more "uncivil or hostile" than those propounded to most first year law students by many of their professors. Further, the former Chief Justice allowed counsel for Combined extra time to complete his arguments and, contrary to normal procedure, again permitted counsel additional time for a second rebuttal at the very end of the argument. A reasonable, objective assessment of the actions and remarks of the former Chief Justice leads to the conclusion that he was merely attempting to insure that the court was adequately apprised of the parties' legal contentions, and was not acting as an "advocate" for appellant Ainsworth's position. His conduct of the hearing, as well as his questioning of both counsel, were "well within the acceptable boundaries of courtroom exchange." *See* In re Drexel Burnham Lambert Inc., 861 F.2d 1307, 1316 (2nd Cir. 1988).

Additionally, former CHIEF JUSTICE GUNDERSON's remarks simply reveal judicial familiarity with the factual record that was before this court. Although he may have expressed strong views regarding the jury's uncontested finding of bad faith, and regarding the separate, additional facts in the record evidencing the oppressive nature of Combined's conduct, his expression of those views at the oral argument exhibited no bias stemming from an extrajudicial source. *See* Goldman v. Bryan, 104 Nev. 644, 653, n. 6, 764 P.2d 1296, 1301, (1988) (what a judge learns in his official capacity does not establish disqualifying bias under NRS 1.225, or a disqualifying appearance of impropriety under the code of judicial conduct); In re Guardianship of Styer, 536 P.2d 717 (Ariz.Ct.App. 1975) (although a judge may have a strong opinion on merits of a cause or a strong feeling about the type of litigation involved, the expression of such views does not establish disqualifying bias or prejudice). *See also* Aetna Life Insurance Co. v. Lavoie, 475 U.S. 813, 820-21 (1986) (general claim of hostility on part of state supreme court justice towards insurance companies that were dilatory in paying just claims fell "well below" level of claims constituting sufficient grounds establishing constitutional violation under due process clause); In re International Business Machines Corp., 618 F.2d 923, 931-32 n. 11 (2nd Cir. 1980) (where, under federal provision similar to

Nevada Code of Judicial Conduct Canon 3, "occasional flareups toward counsel" were held insufficient to establish a judge's personal prejudice against the *litigant* involved, "it would be anomalous to hold" that such a claim could nonetheless satisfy constitutional standard for recusal under the due process clause). We conclude, therefore, that Combined's contentions respecting former CHIEF JUSTICE GUNDERSON's remarks at oral argument are legally insufficient to support the relief requested under either NRS 1.225, the Nevada Code of Judicial Conduct, or the due process clause of the constitution.

Third, in its latest reply, Combined also asserts that former CHIEF JUSTICE GUNDERSON's response to Combined's accusations "condemns Combined and its counsel on facts found by the Justice outside the record of this case." Thus, Combined claims that the response "on its face disqualifies JUSTICE GUNDERSON." We observe, however, that, although former CHIEF JUSTICE GUNDERSON's response does indicate that, *after* the opinion in this case issued, his adverse judicial impressions of the respondent insurance company may have been reinforced by extrajudicial, post-opinion reading, his response recites no facts supporting a reasonable inference of preconceived bias against the insurance company stemming from an extrajudicial source *at or prior to the date this case was decided.*

Further, although former CHIEF JUSTICE GUNDERSON's response candidly acknowledges that he harbored preconceived, negative impressions respecting the legal abilities of one of Combined's counsel, his response also indicates that those impressions were based upon his perception of counsel's prior "work product and performance in this court." Thus, those perceptions constitute neither an extrajudicial, nor a disqualifying bias. *See generally* Goldman v. Bryan, 104 Nev. 644, 764 P.2d 1296 (1988); *see also* In re Cooper, 821 F.2d 833, 838-42 (1st Cir. 1987) (a judge is not required to "mince words" respecting counsel who appear before him; it is a judge's job to make credibility determinations, and when he does so, he does not thereby become subject, legitimately, to charges of bias). To whatever extent former CHIEF JUSTICE GUNDERSON's response may evidence negative, *personal impressions* about Combined's counsel, based upon counsel's prior legal associations, his performance on the bar examination or his marital situation, those impressions were formed during the course of his judicial and administrative duties as a Justice and Chief Justice of this court.[15]

---

[15]Although we anticipated and would have much preferred a more restrained response from the former Chief Justice, it is not difficult to

*See* United States v. Conforte, 457 F.Supp. 641, 657 (D.Nev. 1978) (where *origin* of judge's impressions was inextricably bound up with judicial proceedings, judge's alleged bias did not stem from an extrajudicial source), *modified on other grounds,* 624 F.2d 869 (9th Cir.), *cert. denied,* 449 U.S. 1012 (1980).

Additionally, those negative impressions extended only to *counsel* for the litigant involved, not to the litigant itself. Generally, an allegation of bias in favor of or against counsel for a litigant states an insufficient ground for disqualification because it is not indicative of extrajudicial bias against the *party. See* In re Petition to Recall Dunleavy, 104 Nev. at 784, 769 P.2d at 1275, *citing* Gilbert v. City of Little Rock, Ark., 722 F.2d 1390, 1398-99 (8th Cir. 1983), *cert. denied,* 466 U.S. 972 (1984); *see also* Davis v. Board of School Com'rs of Mobile County, 517 F.2d 1044, 1050 (5th Cir. 1975) (if a party could successfully challenge a judge based upon allegations of bias against party's attorney, it "would bid fair to decimate the bench" and lawyers, once in a controversy with a judge, "would have a license under which the judge would serve at their will"), *cert. denied,* 425 U.S. 944 (1976).

Lastly, if we assume that counsel for Combined has seriously tendered his allegations of bias or prejudice arising out of former CHIEF JUSTICE GUNDERSON's alleged hostility at oral argument, then we must also assume that, shortly after the oral argument, counsel was on notice of at least some of the facts asserted in support of these contentions. Counsel, however, electing to gamble on the outcome of our decision, waited over sixteen months until the decision was announced before tendering these contentions to this court. Similarly, counsel was aware of the nature and circumstances surrounding the previously discussed procedural rulings of this court, not only well in advance of the issuance of this court's decision, but also well in advance of the oral argument.

We have previously held that time limitations on a challenge to a district judge's impartiality are not extended for litigants who knew or should have known the necessary facts at an earlier date.

---

understand why the beleaguered jurist may have been goaded to the uttermost limits of his capacity for tolerance. While in the beginnings of recuperation from a major heart attack for which he was hospitalized, Combined filed a supplement to its motion to disqualify the former Chief Justice that irresponsibly accused him of secret business involvements with Ainsworth's counsel through JUSTICE GUNDERSON's wife. The aforementioned supplement will be dealt with in some detail later in this opinion.

*See* Jacobson v. Manfredi, 100 Nev. 226, 679 P.2d 251 (1984). The statutory and code provisions applicable in this case set forth no specific time limits. Well-reasoned authority supports a conclusion, however, that counsel, knowing facts assertively supportive of a motion for reconsideration, recusal or vacatur based upon charges of bias and impropriety, "may not lie in wait" and raise those allegations in a motion "only after learning the court's ruling on the merits." *See* Phillips v. Amoco Oil Co., 799 F.2d 1464, 1472 (11th Cir. 1986), *cert. denied,* 481 U.S. 1016 (1987). *See also* Delesdernier v. Porterie, 666 F.2d 116, 121 (5th Cir.) (absence of time requirement in federal disqualification provisions does not "allow counsel to make a game of the federal judiciary's ethical obligations"; judiciary should seek to "preserve the integrity of the [provisions] by discouraging bad faith manipulation of its rules for litigious advantage"), *cert. denied,* 459 U.S. 839 (1982).

We conclude, therefore, that the factual allegations Combined has asserted in these respects are legally insufficient to support the relief requested. Additionally, we conclude that Combined waived its right to raise these issues at this late date because its counsel, knowing the subsequently asserted factual basis for these allegations, did not promptly tender an objection to this court, but instead remained silent and gambled on the outcome of the appeal.

B. *Combined's allegations respecting Ainsworth's counsel's association with former Chief Justice Gunderson's 1982 campaign for judicial office.*

Combined disingenuously alleges that former CHIEF JUSTICE GUNDERSON should have disqualified himself from any participation in this appeal because he had a close and undisclosed, political relationship with counsel for Ainsworth. Combined observes that both counsel for Ainsworth acted as Washoe County campaign co-chairmen in the former Chief Justice's 1982 campaign for re-election to this court.

In rejecting a similar contention as legally insufficient to support disqualification or vacatur, we recently held:

> [I]ntolerable results would . . . obtain if a litigant could disqualify a member of this court solely because counsel for the litigant's adversary had years before contributed to the justice's campaign. The citizens of this state have voted to retain an elected judiciary and the Nevada Constitution specifically provides that the justices of this court shall be elected. *See* Nev. Const. art. 6, § 3. . . . If the mere fact that an attorney had contributed to a judge's campaign consti-

tuted a reasonable ground for the subsequent disqualification of that judge, upon a challenge made after the judge has ruled on the merits of a motion; the conduct of judicial business in the courts of this state would be severely and intolerably obstructed.

See In re Petition to Recall Dunleavy, 104 Nev. at 644, 769 P.2d at 1275 (1988). In *Dunleavy,* we further observed:

In a small state such as Nevada, with a concomitantly limited bar membership, it is inevitable that frequent interactions will occur between the members of the bar and the judiciary. Thus, allegations of bias based upon a judge's associations with counsel for a litigant pose a particularly onerous potential for impeding the dispensation of justice.

*Id.; cf.* United States v. Murphy, 768 F.2d 1518, 1537-38 (7th Cir. 1985), *cert. denied,* 475 U.S. 1012 (1986). Moreover, as we noted above, an allegation of bias in favor of or against an attorney for a litigant generally states an insufficient ground for disqualification because it is not indicative of extrajudicial bias against a party. *See Dunleavy, supra.*

In the instant case, we similarly conclude that counsel's associations with the campaign in issue, years before this case came before this court, do not presently constitute legally competent grounds for recusal, vacatur or reargument under our statutes or code of judicial conduct. Nor do such associations establish the direct, substantial, pecuniary, and conflicting interests which have been held to warrant recusal and vacatur under the due process clause. *See* Aetna Life Insurance Co. v. Lavoie, 475 U.S. 813 (1986). This state's constitution and code of judicial conduct specifically compel and countenance the election of all state judges, and leading members of the state bar play important and active roles in guiding the public's selection of qualified jurists. Under these circumstances, it would be highly anomalous if an attorney's prior participation in a justice's campaign could create a disqualifying interest, an appearance of impropriety or a violation of due process sufficient to require the justice's recusal from all cases in which that attorney might be involved.

Additionally, we note that Combined has conspicuously refrained from addressing opposing counsel's averments that their association with the campaign was fully disclosed in numerous public, political advertisements and was well-known among members of the state bar long before this appeal was ever perfected. *See* Adair v. Adair, 670 P.2d 1002, 1003 (Okl.Ct.App. 1983) (where counsel failed to refute opposing counsel's averment that he was informed prior to trial of opposing counsel's

public support of trial judge's campaign for judicial office, appellate court held that "[f]ailure to timely object waived any disqualification of the judge"). We conclude, therefore, that Combined's counsel had knowledge of the factual basis for this contention well in advance of this appeal, and Combined's failure to tender a prompt objection on this ground precludes it from seeking our present consideration of the question. *See* Jacobson v. Manfredi, 100 Nev. 226, 679 P.2d 251 (1984); Phillips v. Amoco Oil Co., 799 F.2d at 1472; Delesdernier v. Porterie, 666 F.2d at 121.

Finally, in response to Combined's allegations, former CHIEF JUSTICE GUNDERSON asserts that an objective assessment of his prior associations with the law firms representing both parties to this appeal reveals no reasonable basis upon which to conclude that he was biased in favor of counsel for Ainsworth. Specifically, former CHIEF JUSTICE GUNDERSON avers that the law firm presently representing Combined in this proceeding, Lionel, Sawyer & Collins, was also supportive of his campaign for re-election. Moreover, the response indicates that a senior partner in that firm has not only been a friend, political ally and supporter of the former Chief Justice, but years ago was also the former Chief Justice's law partner. The response also cites numerous published decisions of this court in which the former Chief Justice ruled against the positions espoused by counsel for Ainsworth in matters that had substantial monetary significance.[16] Under these circumstances, we fully agree with former CHIEF JUSTICE GUNDERSON's statement that "[i]t cannot seriously be contended by objective persons that on such a record, an appearance of impropriety now exists."

### C. *Combined's allegations respecting the Nevada Trial Lawyers Association.*

First, Combined contends that former CHIEF JUSTICE GUNDERSON improperly participated in this matter because he failed to disclose that the Nevada Trial Lawyers Association (NTLA) "had previously honored [him] for his support of causes they espouse," and that it "did so again shortly before the opinion favoring Ainsworth in this appeal." Combined asserts that, not only are both Ainsworth's counsel active members of the NTLA, but that the NTLA filed a brief in this appeal as amicus curiae in favor of Ainsworth's position. Incredibly, Combined also alleges

---

[16]*See* Sierra Pac. Power Co. v. Rinehart, 99 Nev. 557, 665 P.2d 270 (1983); Davies v. Butler, 95 Nev. 763, 602 P.2d 605 (1979); Allen v. Anderson, 93 Nev. 204, 562 P.2d 487 (1977); State v. Kallio, 92 Nev. 665, 557 P.2d 705 (1976).

that, in accepting the above-noted award, the "Chief Justice is reported to have addressed the [NTLA] as a whole and said that the Trial Lawyers were always welcome in the Court because they were always on the right side." Counsel for Combined asserts that he has "interviewed more than one witness on [this] subject," but that "[n]one of these witnesses wishes voluntarily to supply an affidavit." Finally, Combined asserts that the NTLA's primary orientation is "anti-insurance," and that under these circumstances, former CHIEF JUSTICE GUNDERSON's acceptance of the award constituted a violation of the code of judicial conduct and created an appearance of impropriety sufficient to warrant vacatur and reargument. We disagree.

As the responsive affidavits supplied by counsel for Ainsworth establish, in September of 1988, at the NTLA's annual convention, former CHIEF JUSTICE GUNDERSON was presented with a "special recognition award" for eighteen years of dedicated service to the People of the State of Nevada. Contrary to Combined's contention, the award was not in recognition for any unspecified support the former Chief Justice allegedly provided to the causes the NTLA espouses. The special award consisted of a modest plaque entitled, "Lifetime Dedication to Nevada's Justice System Award."[17] Additionally, while attending the award ceremony, the former Chief Justice paid for his own airfare, his own motel room and his own meals. Further, we deem it of little significance that counsel for Ainsworth are prominent members of the NTLA. It is our understanding that approximately one thousand members of the Nevada Bar belong to that organization, including members of the firm presently representing Combined on appeal, and from the affidavits submitted by Ainsworth, it appears that the NTLA is a much more broadly based organization than Combined portrays.

---

[17]We note that several attorneys in the firm presently representing Combined in this appeal are apparently also members of the NTLA, and, therefore, presumably had knowledge of the award at the time it was conferred. Moreover, the award in question was disclosed and reported in newspapers throughout the state at the time. In one such report, it was noted that former CHIEF JUSTICE GUNDERSON had not only been honored by the NTLA, but he had also recently received the American Judicature Society's "Herbert Harley Award," as well as the American Bar Association's annual award for excellence in judicial education. *See Gunderson Cited For His Dedication,* Las Vegas Sun, September 23, 1988; *see also Justice Gunderson Honored,* Reno Gazette-Journal, September 16, 1988; *Nevada Trial Lawyers Honor Gunderson,* Las Vegas Sun, September 16, 1988. Combined has not refuted the averments presented by Ainsworth that its counsel knew or had reason to know of the award prior to the issuance of this court's decision. It would appear, therefore, that Combined's counsel could have tendered a much more timely objection to the former Chief Justice's participation, but instead, did not object on these tenuous grounds until well after this court's

Ainsworth has also submitted the affidavits of numerous individuals who were present at the award dinner, and who deny that the former Chief Justice made the remark attributed to him by Combined and its anonymous, reluctant witnesses. One such affidavit characterizes Combined's summary of the former Chief Justice's remarks as "totally inaccurate" and as "an unfair gross distortion." In light of these refutations, Combined's bare, unsupported allegation is of little legal significance. *See* United States v. Hines, 696 F.2d 722, 729 (10th Cir. 1982) (where charge of bias in affidavit was based upon alleged remark of trial judge that an unnamed person allegedly overheard, court rejected the charge as wholly insufficient and noted that justice would be severely impeded if disqualification could be premised on such "scant submissions").

In support of its assertion that the acceptance of the award constituted a violation of the Canons of the Code of Judicial Conduct, Combined cites a "quiz" that appeared in the November 1, 1988, issue of the ABA Journal and an ABA Informal Ethics Opinion which the quiz purports to construe. *See* ABA Comm. on Ethics and Professional Responsibility, Informal Op. 86-1516 (1986). These authorities *suggest* that a "specialized bar association" which has a clearly definable litigation posture, may not ethically establish "a judicial award program which the association acknowledges could likely result in the selection of a judge whose philosophy is similar to that of the association." *Id.* As noted, however, the NTLA is a much more broadly based bar association than Combined attempts to portray. Further, as Ainsworth has observed, numerous jurists have been similarly honored by the NTLA and its parent organization, the Association of Trial Lawyers of America. Notably, the entire Nevada Supreme Court was similarly honored by the NTLA in 1986. Under these circumstances, it cannot be reasonably contended by an objective person, knowing all the facts and circumstances, that by accepting such an award, any of these members of the judiciary, including the former Chief Justice, lent "the prestige of [their] office[s] to advance the private interests of others. . . ." Nor did they thereby "convey or permit others to convey the impression" that the organization was in a special position to influence them. *See* Nev. Code of Judicial Conduct Canon 2B; *see also* Nev. Code of Judicial Conduct Canon 5C(5)(a) (a judge may accept a gift incident to a public testimonial to him). Accordingly, we reject these allegations as wholly insufficient to support

opinion had issued. Accordingly, Combined's failure to tender a prompt objection constitutes a waiver of its right to raise the issue at this late date. *See* Jacobson v. Manfredi, 100 Nev. 226, 679 P.2d 251 (1984); Phillips v. Amoco Oil Co., 799 F.2d at 1472; Adair v. Adair, 670 P.2d at 1003.

vacatur or reargument under NRS 1.225, the code of judicial conduct or the due process clause.[18]

Second, Combined asserts that a "substantial and pervasive appearance of impropriety" exists in this case because Laura FitzSimmons, the attorney who signed the amicus brief on behalf of the NTLA, simultaneously represented former CHIEF JUSTICE GUNDERSON in another unrelated matter. Combined contends that vacatur and reargument are warranted because the former Chief Justice should have disclosed this attorney-client relationship or recused himself from participating in this appeal. *See* Potashnick v. Port City Const. Co., 609 F.2d 1101 (5th Cir.) (judge was disqualified from case where, during the litigation before him, judge was not only being represented in another matter by counsel for the *litigant,* but also had personal business dealings with that counsel), *cert. denied,* 499 U.S. 820 (1980); ABA Comm. on Ethics and Professional Responsibility, Informal Op. 1477 (1981) (a judge must recuse himself in cases in which a *litigant* is represented by the judge's own attorney). We disagree.

We are persuaded by the responsive affidavits of FitzSimmons and other members of the NTLA amicus curiae committee that FitzSimmons' involvement in *Ainsworth* was extremely limited and cannot reasonably support any inference of impropriety. For example, the affidavits establish that FitzSimmons did not author the amicus brief, but merely signed it, at the request of the chairman of the NTLA amicus curiae committee, because she was the only Northern Nevada member of the committee available who could do so in time to insure that the brief was promptly filed with the clerk of this court in Carson City. Further, FitzSimmons avers that she "knew very little about the facts of the [Ainsworth] case," that she had "absolutely no motive" to attempt to affect the outcome of the appeal, that she did not participate in and only attended a portion of the oral argument, and that she "never discussed this case with CHIEF JUSTICE GUNDERSON before his retirement from the court."[19]

---

[18]Combined similarly complains that the counsel who signed the amicus brief on behalf of the NTLA in this appeal hosted an "invitation only" retirement party for former CHIEF JUSTICE GUNDERSON on January 6, 1989. We conclude that any inference of impropriety arising out of said counsel's voluntary involvement in that event, after the former Chief Justice's retirement from this court, is wholly unreasonable. We reject this contention as entirely frivolous.

[19]We also note that FitzSimmons' representation of former CHIEF JUSTICE GUNDERSON in the above referenced unrelated matter concluded in April of 1987, after the NTLA brief was filed in this case, but before this case was orally argued, and well before the opinion was filed.

Moreover, although Combined has cited authorities which suggest that a judge should not participate in a case in which the judge's own attorney also represents a "litigant" appearing in the case, Combined has cited no authorities establishing that an attorney's appearance on behalf of an amicus curiae constitutes representation of a "litigant." In our view, it cannot be reasonably contended that the NTLA appeared in this matter as a "litigant." Rather, the NTLA was merely allowed to file a brief in this appeal as a "friend of the court." Nor can it be reasonably inferred, under the facts cited above, that FitzSimmons' act of signing the NTLA brief and attending a portion of the oral argument amounted to representation of a "litigant" sufficient to create a disqualifying appearance of impropriety.

Lastly in this regard, we note that FitzSimmons has averred that her husband serves on the Board of Governors of the State Bar of Nevada with one of Combined's present co-counsel on appeal, as well as with a member of a firm that remains one of Combined's counsel of record. On information and belief, Fitz-Simmons avers that her representation of former CHIEF JUSTICE GUNDERSON was discussed among the members of the Board and was known to Combined's counsel well before this appeal came before this court. Once again, however, Combined's counsel have not refuted the averment and have conspicuously refrained from any comment respecting when they became aware of the alleged factual basis for their complaints of impropriety and bias. Accordingly, we conclude that Combined has not only asserted allegations that are legally insufficient to support the relief requested under NRS 1.225, the code of judicial conduct or the due process clause, but its failure to tender a prompt objection constitutes a waiver of its right to raise the issue at this point in these proceedings. *See* Jacobson v. Manfredi, 100 Nev. at 230, 679 P.2d at 254; Phillips v. Amoco Oil Co., 799 F.2d at 1472; Adair v. Adair, 670 P.2d at 1003.

D. *Combined's allegations respecting former Chief Justice Gunderson's involvement in unrelated litigation.*

Combined further maintains that an appearance of impropriety exists because of former CHIEF JUSTICE GUNDERSON's alleged "undisclosed relationship" with counsel for Ainsworth and with attorney FitzSimmons in unrelated litigation pending in the state district court at the time this case initially came before us. *See* Flangas v. Manoukian, Case No. A208009, Eighth Jud. Dist. Ct., Clark Co. (1986). The unrelated conspiracy litigation in question has a tortuous history that has no substantive connection

whatsoever with the instant matter. *See generally* In re Ross, 99 Nev. 1, 656 P.2d 832, *reh'g denied,* 99 Nev. 657, 668 P.2d 1089 (1983). Nonetheless, Combined attempts to relitigate and rehash issues which have been long since formally adjudicated in proceedings that are not even remotely connected with the instant case. In essence, however, Combined alleges that an appearance of impropriety exists in this case because one of Ainsworth's counsel, Peter C. Neumann, represented the plaintiff Flangas in civil litigation in the state court, and because former CHIEF JUSTICE GUNDERSON, represented by attorney FitzSimmons, successfully resisted an improper attempt by the defendant in that same litigation to subpoena certain evidence under the former Chief Justice's control.[20]

More specifically, Combined speculates that (1) the former Chief Justice was allied with attorneys Neumann and FitzSimmons in pursuit of a common goal; (2) Neumann *may have* entered the *Flangas* case at the urging of former CHIEF JUSTICE GUNDERSON; and (3) Neumann, FitzSimmons and the former Chief Justice *may have* discussed the Ainsworth case in private, undisclosed interviews respecting the *Flangas* litigation. These speculative, conclusory allegations, however, are insufficient on their face to establish legally cognizable grounds for recusal. *See* Goldman v. Bryan, 104 Nev. 644, 764 P.2d 1296 (1988).

Moreover, the allegations are refuted by the affidavits and verified responses of the concerned parties. For example, the averments of both attorney Neumann and the former Chief Justice indicate that they were not "allied in pursuit of a common goal," and that they did not discuss the *Ainsworth* case in any interviews conducted in connection with the *Flangas* case. Further, the affidavits of Neumann and Flangas deny that Neumann entered the litigation at the urging of the Chief Justice; rather, it appears that Neumann was recommended to Flangas by an attorney in

---

[20]The subpoena in question, which the district court quashed as "invalid, burdensome, and oppressive," sought evidence that the district court concluded had been entrusted to former CHIEF JUSTICE GUNDERSON in *custodia legis* by the federal court. *See* Flangas v. Manoukian, Case No. A208009, Eighth Jud. Dist. Ct., Clark Co. (orders filed November 7, 1986, and March 20, 1987). Combined argues that former CHIEF JUSTICE GUNDERSON was not entrusted with any evidence by the federal court in *custodia legis.* We may appropriately take judicial notice of the public record of the state district court proceedings, and we have done so. *See* Jory v. Bennight, 91 Nev. 763, 542 P.2d 1400 (1975); Cannon v. Taylor, 88 Nev. 89, 493 P.2d 1313 (1972). Our review of the pertinent orders entered by the district court reveals that former CHIEF JUSTICE GUNDERSON's recital of his role in that litigation is fully supported by the public record of the state district court proceedings and that the district court previously resolved this and other issues raised by Combined, respecting former CHIEF JUSTICE GUNDERSON's role in that litigation, adversely to the position now espoused by Combined.

private practice. Accordingly, we reject Combined's contentions in this regard as wholly insufficient to establish any disabling bias or any reasonable inference of impropriety.[21]

### E. Combined's allegations respecting Mrs. Gunderson and Peavine, Inc.

In 1985, counsel for Ainsworth, Peter C. Neumann, formed Peavine, Inc., for the purpose of obtaining an FCC permit to operate a new television station in the Reno, Nevada area. Neumann withdrew Peavine's application to the FCC and dissolved the corporation later that same year when it became clear that it had little chance of successfully competing against other applicants for the permit. Apparently, with the intention of being repaid by the corporation if it became successful, Neumann personally paid the expenses incident to the formation of the corporation and incurred as a result of filing the FCC application. Neumann avers, however, that during its short-lived existence, Peavine, had no assets or liabilities, no stock was ever issued by Peavine to any person, and "no funds or monies were ever received" by the corporation or any of the individuals involved. Among others, former CHIEF JUSTICE GUNDERSON's wife and brother-in-law were two of the individuals involved in Peavine. Combined alleges that Mrs. Gunderson's involvement in the Peavine venture "supplies an additional ground for disqualification of JUSTICE GUNDERSON, vacatur, and rehearing in this case." We disagree.

Combined asserts that former CHIEF JUSTICE GUNDERSON should have disclosed "his wife's financial dealings with Neumann in this case" because Nevada is a community property state and Mrs. Gunderson's "interest in an exposure to liability of the debts of Peavine would presumptively be shared by her husband." We note, however, that Canon 6 of the Nevada Code of Judicial Conduct only requires a judge to report "extrajudicial" income. Further, Canon 6C provides that compensation or income of a judge's spouse, attributed to the judge because of

---

[21]We further note that the unrelated litigation in question was highly publicized within the state and involved, among other things, certain actions of the Board of Governors of the State Bar of Nevada. As previously noted, one of Combined's present co-counsel on appeal, as well as a member of the firm which represented Combined below, are members of the Board of Governors. Thus, it strains credulity to suppose that Combined's counsel were not aware of the various individuals and attorneys involved in the *Flangas* case, well in advance of the date this case was argued or decided. Under these circumstances, we are persuaded that Combined waived its right to tender an objection on these grounds at this late date. *See* Jacobson v. Manfredi, 100 Nev. at 230, 679 P.2d at 254; Phillips v. Amoco Oil Co., 799 F.2d at 1472; Adair v. Adair, 670 P.2d at 1003.

community property laws, *"is not extrajudicial compensation."*
Thus, even if Mrs. Gunderson had profited in some way from her
association with Peavine, Canon 6 imposed no obligation upon
the former Chief Justice to disclose his wife's involvement.
Contrary to Combined's contentions, therefore, the Peavine ven-
ture does not establish that the former Chief Justice violated any
code provisions relating to his duties to disclose the financial
dealings of his spouse. *See* Nev. Code of Judicial Conduct Canon
6. Nor do Combined's speculative allegations demonstrate that
the former Chief Justice violated Canon 3C(2) by failing to keep
himself informed of the financial dealings of his spouse.

Moreover, the Peavine venture was abandoned long before this
appeal was docketed in this court. There was no business rela-
tionship in existence at the time this case came before this court
which could have been affected by the outcome of this appeal or
created an appearance of impropriety. Thus, the legal authorities
cited by Combined are clearly distinguishable from the instant
situation. *Cf.* Liljeberg v. Health Services Acquisition Corp.,
486 U.S. 847, 108 S.Ct. 2194 (1988) (judge had fiduciary inter-
est in litigation before him, sufficient to warrant his disqualifica-
tion under 28 U.S.C. § 455, where, *at the time of trial,* judge was
trustee for university that had substantial financial interest in the
outcome of the litigation); Aetna Life Insurance Co. v. Lavoie,
475 U.S. 813 (1986) (vacation of state supreme court opinion
required, where, *at the time opinion was issued,* state supreme
court justice had a direct, pecuniary interest in outcome of
appeal); Potashnick v. Port City Const. Co., 609 F.2d 1101 (5th
Cir.) (judge was disqualified from case where, *during the litiga-
tion before him,* judge was not only being represented in another
matter by counsel for litigant, but judge had personal business
dealings with that counsel as well), *cert. denied,* 449 U.S. 820
(1980). Further, Combined's allegations completely fail to estab-
lish that, during his tenure on this court, former CHIEF JUSTICE
GUNDERSON *ever had any direct, ongoing pecuniary interest* in
the outcome of any litigation before this court, including the
*Ainsworth* litigation. *See* Nev. Code of Judicial Conduct Canons
3C(1)(d) and 6C; NRS 1.225(2)(a). The long abandoned business
link between Neumann and Mrs. Gunderson is simply too remote
in time as well as in substance from the *Ainsworth* case. *See* In re
Drexel Burnham Lambert Inc., 861 F.2d 1307 (2nd Cir. 1988)
(where party to litigation before judge had been retained by a firm
under contract with judge's wife's family to arrange financing for
sale of family business, judge's connection with party was *too
remote* to warrant recusal even though wife was expected to
receive $30 million from the sale).

We conclude, therefore, that Combined's allegations are
wholly insufficient, under NRS 1.225, the Nevada Code of Judi-

cial Conduct, or the due process clause, to establish that former CHIEF JUSTICE GUNDERSON had any direct disqualifying interest in this litigation or that his impartiality toward the litigants might reasonably be questioned.[22]

## IV. *COMBINED'S MOTION FOR AN EVIDENTIARY HEARING AND DISCOVERY*

Combined has moved this court for an evidentiary hearing and discovery on its factual allegations of bias and impropriety. As discussed above, however, we have concluded that Combined's factual allegations present no legally competent grounds supporting a reasonable inference of bias, prejudice or impropriety under NRS 1.225, the Nevada Code of Judicial Conduct or the due process clause of the constitution. Under such circumstances, "summary dismissal of the instant challenge is warranted as a matter of law, and no formal hearing is required." *See* In re Petition of Dunleavy, 104 Nev. at 784, 769 P.2d at 1274. Further, we are persuaded that most, if not all, of the factual allegations Combined has asserted in support of its motions were known or should have been known to Combined's counsel well before this court issued its opinion. Such prior notice forecloses any right Combined might have otherwise asserted to an evidentiary hearing or discovery. Moreover, as previously noted, any issue respecting former CHIEF JUSTICE GUNDERSON's *present* disqualification has been rendered moot by his retirement. Therefore, the

---

[22]Combined also contends that Neumann's personal efforts and services on behalf of Peavine, Inc., constituted a "gift, bequest, favor or loan" to Mrs. Gunderson under Nevada Code of Judicial Conduct Canon 5C. In light of the fact that Mrs. Gunderson never received anything of any real, tangible worth as a result of her involvement in Peavine, we conclude that Neumann's efforts on behalf of Peavine cannot be reasonably characterized as a "gift" under Canon 5C, and do not establish any reasonable inference of favoritism or impropriety. Combined also alleged that there was no public record of Mrs. Gunderson's business relationship with Neumann and Peavine, Inc. Although there is evidence that this assertion may have been knowingly false, it is clear from the record that such a relationship was revealed in a public notice published in Reno's largest newspaper of general circulation on four separate occasions. Moreover, Combined's bald assertion that Mrs. Gunderson's involvement with Neumann and Peavine, Inc., and JUSTICE GUNDERSON's failure to disclose the benefits from such involvement, constituted violations of Nevada's Judicial Code is specious. At most, Mrs. Gunderson may have had an expectancy of value if Neumann's efforts as an attorney had borne fruit for Peavine, Inc. They did not. Mrs. Gunderson received neither value nor liability. Whatever expectancy she may have had did not materialize. Furthermore, if Mrs. Gunderson had received compensation in the form of stock or income for her efforts, JUSTICE GUNDERSON's community property interest in any such emoluments would not have been reportable by him under the Judicial Code. *See* Canon 6C.

hearing before unchallenged justices that is provided under NRS 1.225(4) is inapplicable and, contrary to Combined's suggestion, summary rejection of its factual allegations will not deny Combined any right to established adjudicatory procedures.

Finally in this regard, Combined asserts that a hearing and discovery are necessary because it has a right to inquire into the "origin, history and role of the 'bench memo' which was prepared before oral argument" by former CHIEF JUSTICE GUNDERSON's law clerk. Combined, however, has established no factual circumstances or legal cause why it should have the right to inquire into the confidential work product of this court. Nor has our independent inquiry into the circumstances surrounding the preparation of that memorandum revealed any. Even if the former Chief Justice did influence his law clerk's preparation of that memorandum, such interaction between a justice and his law clerk is entirely proper. Thus, Combined has neither alleged nor demonstrated any facts or circumstances entitling it to an evidentiary hearing on this question. In any event, our inquiry into the matter reveals that the contents of the law clerk's memorandum in the *Ainsworth* case resulted entirely from that individual's independent research and analysis, free of any direct influence from former CHIEF JUSTICE GUNDERSON. Accordingly and in light of the above, we deny Combined's motion for an evidentiary hearing or discovery.

## V. AINSWORTH'S MOTION FOR SANCTIONS

Ainsworth requests this court to impose sanctions upon Combined and its counsel for abusing the appellate processes of this court and for knowingly filing false and frivolous claims for the sole purpose of delay. *See* NRAP 38. As discussed above, we are persuaded that counsel for Combined has tendered a number of entirely frivolous allegations. Further, the manner in which Combined has litigated this matter in this court clearly suggests that it has attempted to misuse the appellate processes of this court for the sole purpose of delaying a final resolution of this litigation. Nonetheless, we have concluded that Ainsworth's motion for sanctions should be denied.

As previously noted, the punitive damage award in this matter is the largest ever affirmed by this court. In light of the substantial penalty that Combined has already incurred, we are reluctant to impose further punishment against the company in the form of sanctions, and decline to do so.

For the reasons expressed above, we hereby deny the petitions and motions presently pending in this docket, and we direct the clerk of this court to issue the remittitur forthwith.

Mowbray, J., concurring:

*I concur in the result only.*

This case is a simple lawsuit.

It was tried to a jury and decided by a jury. The jury heard the evidence. The district judge properly charged the jury. At the conclusion of the presentation of the evidence the jury found in favor of appellant Ainsworth and awarded both compensatory and punitive damages. The evidence supports the jury's verdict.

Respondent, Combined Insurance Company of America, has presented nothing in its petition for rehearing now before us that challenges in any way the integrity of the jury's verdict. Therefore, I would let the jury's verdict stand and I would deny respondent's petition for rehearing. I would also deny Ainsworth's petition for rehearing. Finally, I reject as wholly meritless Ainsworth's request for sanctions.

# APPENDIX

NRS 1.225 and the Nevada Code of Judicial Conduct provide:

**1.225 Grounds and procedure for disqualifying supreme court justices.**

1. A justice of the supreme court shall not act as such in an action or proceeding when he entertains actual bias or prejudice for or against one of the parties to the action.

2. A justice of the supreme court shall not act as such in an action or proceeding when implied bias exist in any of the following respects:

(a) When he is a party to or interested in the action or proceeding.

(b) When he is related to either party by consanguinity or affinity within the third degree.

(c) When he has been attorney or counsel for either of the parties in the particular action or proceeding before the court.

(d) When he is related to an attorney or counselor for either of the parties by consanguinity or affinity within the third degree.

3. A justice of the supreme court, upon his own motion, may disqualify himself from acting in any matter upon the ground of actual or implied bias.

4. Any party to an action or proceeding seeking to disqualify a justice of the supreme court for actual or implied bias shall file a charge in writing, specifying the facts upon which such disqualification is sought. Hearing on such charge shall be had before the other justices of the supreme court.

5. Upon the disqualification of a justice of the supreme court pursuant to this section, a district judge shall be designated to sit in his place as provided in section 4 of article 6 of the constitution of the State of Nevada.

6. No person shall be punished for contempt for making, filing or presenting a charge for disqualification pursuant to subsection 4.
(Added to NRS by 1957, 521)

## PART V. NEVADA CODE OF JUDICIAL CONDUCT

### CANON 1

### A judge should uphold the integrity and independence of the judiciary.

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective without any limitation upon the supreme court in the exercise of its powers of general superintendence, whether constitutional, statutory of inherent, in areas not delineated in the Code.
[Added; effective July 1, 1977.]

### CANON 2

### A judge should avoid impropriety and the appearance of impropriety in all his activities.

A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
B. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness. ·
[Added; effective July 1, 1977.]

### CANON 3

### A judge should perform the duties of his office impartially and diligently.

The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:

## A. Adjudicative responsibilities.

(1) A judge should be faithful to the law and maintain professional competence. He should be unswayed by partisan interest, public clamor, or fear of criticism.

(2) A judge should maintain order and decorum in proceedings before him.

(3) A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity, and should require similar conduct of lawyers, and of his staff, court officials, and others subject to his direction and control.

(4) A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and except as authorized by law, neither initiate nor consider ex parte or other communications intended to influence his judicial action concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if he gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond. Notice need not be given where the advice is confined to case citations or other abstract legal references.

(5) A judge should dispose promptly of the business of the court.

(6) A judge should abstain from public comment about a pending or impending proceeding in any court, and should require similar abstention on the part of court personnel subject to his direction and control. This subsection does not prohibit judges from making public statements in the course of their official duties or from explaining for public information the procedures of the court.

(7) Proceedings in court should be conducted with fitting dignity and decorum. As provided by law, a court during any and all court proceedings under the jurisdiction of such court, on its own motion or on the motion of an attorney representing any interested party, or at the request of the witness testifying under subpena, shall prohibit by minute order any person, firm, association or corporation from broadcasting, televising, or taking motion pictures, or arranging for the broadcasting, televising, or taking of motion pictures of, such proceedings. The taking of still photographs in the courtroom, during sessions of the court or recesses between sessions, should be regulated by local rule or practice.

## B. Administrative responsibilities.

(1) A judge should diligently discharge his administrative

responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court officials.

(2) A judge should require his staff and court officials subject to his direction and control to observe the standards of fidelity and diligence that apply to him.

(3) A judge should report dishonesty, or other serious unprofessional conduct of a judge or lawyer to the appropriate disciplinary body.

(4) A judge should not make unnecessary appointments. He should exercise his power of appointment only on the basis of merit, avoiding nepotism and favoritism. He should not approve compensation of appointees beyond the fair value of services rendered.

### C. Disqualifications.

(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(a) He has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings;

(b) He has served as lawyer for any of the parties or has been a material witness in the particular action or proceeding before the court; or a lawyer with whom he previously practiced law was during such association a material witness concerning the matter;

(c) A lawyer with whom he previously practiced law served during such association as a lawyer in the particular action or proceeding before the court;

(d) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(e) He knows that he or his spouse, or a person within the third degree of relationship to either of them:

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Has an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is likely to be a material witness in the proceeding.

(2) A judge should inform himself about his personal and fiduciary financial interest, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.

(3) For the purpose of this section:

(a) The degree of relationship is calculated according to the civil law system;

(b) "Fiduciary" includes such relationships as executor, administrator, trustee, and guardian;

(c) "Financial interest" means ownership of a legal or equitable interest, however small, or a relationship as director, advisor, or other participant in the affairs of a party, except that:

(i) Ownership in a mutual or common investment fund that holds securities is not a "financial interest" in such securities unless the judge participated in the management of the fund;

(ii) An office in an educational, religious, charitable, fraternal, or civic organization is not a "financial interest" in securities held by the organization;

(iii) The proprietary interest of a policyholder in a mutual insurance company, of a depositor in a mutual savings association, or a similar proprietary interest, is a "financial interest" in the organization only if the outcome of the proceeding could substantially affect the value of the interest;

(iv) Ownership of government securities is a "financial interest" in the issuer only if the outcome of the proceeding could substantially affect the value of the securities.

### D. Remittal of disqualifications.

(1) A judge disqualified by the terms of Canon 3C(1)(c), Canon 3C(1)(d) or Canon 3C(1)(e) may, instead of withdrawing from the proceeding, disclose on the record the basis of his disqualification. If, based on such disclosure, the parties and lawyers, independently of the judge's participation, all agree in writing or on the record in open court that the judge's relationship is immaterial or that his financial interest is insubstantial, the judge is no longer disqualified, and may participate in the proceeding. The agreement shall be incorporated in the record of the proceeding.

(2) Canon 3C(1)(e)(ii) shall not apply to the presentation of ex parte or uncontested matters except in fixing attorney's fees.

[Added; effective July 1, 1977.]

### CANON 4

### A judge may engage in activities to improve the law, the legal system, and the administration of justice.

As a judicial officer and person specially learned in the law, a judge is in a unique position to contribute to the improvement of the law, the legal system, and the administration of justice, including revision of substantive and procedural law and improvement of criminal and juvenile justice. To the extent that his time permits, he is encouraged to do so, either independently

or through a bar association, judicial conference, or other organization dedicated to the improvement of the law.

A judge, subject to the proper performance of his judicial duties, may engage in the following quasi-judicial activities:

A. He may speak, write, lecture, teach, and participate in other activities concerning the law, the legal system, and the administration of justice.

B. He may appear at a public hearing before an executive or legislative body or official on matters concerning the law, the legal system and the administration of justice, and he may otherwise consult with an executive or legislative body or official on such matters.

C. He may serve as a member, officer, or director of an organization or governmental agency devoted to the improvement of the law, the legal system, or the administration of justice. He may assist such an organization in raising funds and may participate in their management and investment, but should not individually solicit funds. He may make recommendations to public and private fund-granting agencies on projects and programs concerning the law, the legal system, and the administration of justice.

[Added; effective July 1, 1977.]

## CANON 5

### A judge should regulate his extrajudicial activities to minimize the risk of conflict with his judicial duties.

#### A. Avocational activities.

A judge may write, lecture, teach and speak on nonlegal subjects, and engage in the arts, sports, and other social and recreational activities, if such avocational activities do not detract from the dignity of his office or interfere with the performance of his judicial duties.

#### B. Civic and charitable activities.

A judge may participate in civic and charitable activities that do not reflect adversely upon his impartiality or interfere with the performance of his judicial duties. A judge may serve as an officer, director, trustee, or nonlegal advisor of a bona fide educational, religious, charitable, fraternal, or civic organization subject to the following limitations:

(1) A judge should not serve if it is likely that the organization will be engaged in proceedings that would ordinarily come before him or will be regularly engaged in adversary proceedings in any court.

(2) A judge should not individually solicit funds for any

educational, religious, charitable, fraternal, or civic organization, or use or permit the use of the prestige of his office for that purpose, but he may be listed as an officer, director, or trustee of such an organization. A judge may, however, join a general appeal on behalf of an educational, religious, charitable, or fraternal organization, or speak on behalf of such organization.

## C. Financial activities.

(1) A judge should refrain from financial and business dealings that tend to reflect adversely on his impartiality, interfere with the proper performance of his judicial duties, or exploit his judicial position.

(2) A judge should not involve himself in frequent transactions with lawyers or persons likely to come before the court on which he serves.

(3) Subject to the requirements of subsection (1), a judge may hold and manage investments, including real estate, and engage in other remunerative activity, but should not participate in, nor permit his name to be used in connection with, any business venture or commercial advertising program, with or without compensation, in such a way as would justify a reasonable inference that the power or prestige of his office is being utilized to promote a business or commercial product. A judge should not serve as an officer, director, manager, or employee of a business affected with a public interest including, without limitation, a financial institution, insurance company, or public utility.

(4) A judge should manage his investments and other financial interests to minimize the number of cases in which he is disqualified. As soon as he can do so without serious financial detriment, he should divest himself of investments and other financial interests that require frequent disqualifications.

(5) Neither a judge nor a member of his family residing in his household should accept a gift, bequest, favor or loan from anyone except as follows:

(a) A judge may accept a gift incident to a public testimonial to him; books supplied by publishers on a complimentary basis for official use; or an invitation to the judge and his spouse to attend a function or activity devoted to the improvement of the law, the legal system, or the administration of justice;

(b) A judge or a member of his family residing in his household may accept ordinary social hospitality; a gift, bequest, favor, or loan from a relative; a wedding or engagement gift; a loan from a lending institution in its regular course of business on the same terms generally available to persons who are not judges; or a scholarship or fellowship awarded on the same terms applied to other applicants;

(c) A judge or a member of his family residing in his household may accept any other gift, bequest, favor, or loan only if the donor is not a party or other person whose interests have come or are likely to come before him, and, if its value exceeds $250, the judge reports it in the same manner as he reports compensation in Canon 6C.

(6) For the purposes of this section "member of his family residing in his household" means any person who resides in a judge's household and who is a relative of the judge or is treated by the judge as a member of his family.

(7) A judge is not required by this Code to disclose his income, debts, or investments, except as provided in this Canon and Canons 3 and 6.

(8) Information acquired by a judge in his judicial capacity should not be used or disclosed by him in financial dealings or for any other purpose not related to his judicial duties.

## D. Fiduciary activities.

A judge should not serve as the executor, administrator, trustee, guardian, or other fiduciary, except for the estate, trust, or person of a member of his family, and then only if such service will not interfere with the proper performance of his judicial duties. "Member of his family" includes a spouse, child, grandchild, parent, grandparent, or other relative or person with whom the judge maintains a close familial relationship. As a family fiduciary the judge is subject subject to the following restrictions:

(1) He should not serve if it is likely that as a fiduciary he will be engaged in proceedings that would ordinarily come before him, or if the estate, trust, or ward becomes involved in adversary proceedings in the court on which he serves or one under its appellate jurisdiction.

(2) While acting as a fiduciary a judge is subject to the same restrictions on financial activities that apply to him in his personal capacity.

## E. Arbitration.

A judge should not act as an arbitrator or mediator except in the performance of his judicial duties.

## F. Practice of law.

A judge should not practice law except as permitted by law.

## G. Extrajudicial appointments.

A judge should not accept appointment to a governmental committee, commission, or other position that is concerned with issues of fact or policy on matters other than the improvement of the law, the legal system, or the administration of justice. A

judge, however, may represent his country, state or locality on ceremonial occasions or in connection with historical, educational, cultural, and community service activities.

[Added; effective July 1, 1977.]

## CANON 6

### A judge should regularly file reports of compensation received for quasi-judicial and extrajudicial activities.

A judge may receive compensation and reimbursement of expenses for the quasi-judicial and extrajudicial activities permitted by this Code, if the source of such payments does not give the appearance of influencing the judge in his judicial duties or otherwise give the appearance of impropriety, subject to the following restrictions:

### A. Compensation.

Compensation should not exceed a reasonable amount nor should it exceed what a person who is not a judge would receive for the same activity.

### B. Expense reimbursement.

Expense reimbursement should be limited to the actual cost of travel, food, and lodging reasonably incurred by the judge and, where appropriate to the occasion, by his spouse. Any payment in excess of such an amount is compensation.

### C. Public reports.

A judge should report the date, place and nature of any activity for which he received compensation, and the name of the payor and the amount of compensation so received. Compensation or income of a spouse attributed to the judge by operation of a community property law is not extrajudicial compensation to the judge. His report should be made annually and should be filed on or before April 30 of each year as a public document in the office of the clerk of the supreme court.

[Added; effective July 1, 1977.]

## CANON 7

### A judge should refrain from political activity inappropriate to his judicial office.

### A. Political conduct in general.

(1) A judge or a candidate for election to judicial office should not:

(a) Act as a leader or hold any office in a political organization;

(b) Make speeches for a political organization or candidate or publicly endorse a candidate for nonjudicial office;

(c) Solicit funds for a political organization or candidate;

(2) A judge should not become a candidate in an election for a nonjudicial office, except as the constitution of Nevada permits.

## B. Campaign conduct.

(1) A candidate, including an incumbent judge, for a judicial office:

(a) Should maintain the dignity appropriate to judicial office, and should encourage members of his family to adhere to the same standards of political conduct that apply to him;

(b) Should prohibit public officials or employees subject to his direction or control from doing for him what he is prohibited from doing under this Canon;

(c) Should not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office; indicate his views on pending or impending litigation; or misrepresent his identify, qualifications, present position, or other fact. He may campaign on the basis of his ability, experience, and record; and may answer allegations directed against his record in office.

(2) A candidate, including an incumbent judge, for a judicial office, may solicit funds for his campaign no earlier than 180 days before the primary election and no later than 90 days after the last election in which he participates during the election year. A candidate should not use or permit the use of campaign contributions for purposes unrelated to the campaign.

(3) A candidate, including an incumbent judge, shall comply with the provisions of the Nevada Election Campaign Practices Act, as adopted in 1975 and now appearing as NRS 294A.010 et seq.

[Added; effective July 1, 1977.]