*1252
 
 OPINION
 

 Per Curiam:
 

 This is a case involving fraud, bad faith, and violations of the Nevada Unfair Claims Practices Act by a medical insurance company and its policy administrator. Respondent/cross-appellant Debra Bartgis (Bartgis) is a court reporter who filed a medical insurance claim subsequent to having surgery. Prior to the surgery, the underwriter for her major medical policy had changed. The new underwriter became appellant/cross-respondent North American Life and Casualty, now known as Allianz Life Insurance Company of North America (Allianz).
 

 The administrator of the policy, appellant Albert H. Wohlers & Co. (Wohlers), had notified Bartgis of the change and sent her a copy of the new insurance certificate. However, Bartgis was unaware that a new internal cost limitation in her policy effectively limited her in-patient hospitalization coverage to room and board in the event that her hospitalization exceeded twenty-four hours. When the new internal cost limitation provision was triggered, all hospital charges beyond room and board were considered “ancillary” and were covered at a substantially reduced rate.
 

 After her surgery, Bartgis filed a claim with Allianz pursuant to her major medical policy. However, Wohlers informed Bartgis that her Allianz policy would cover only ten percent of her total hospital bill of approximately $9500.00 because her hospitalization had exceeded twenty-four hours. After Allianz’s repeated
 
 *1253
 
 refusals to pay additional amounts pursuant to her policy, Bartgis filed a civil complaint against Allianz and Wohlers, alleging breach of contract, fraud, bad faith, and violations of the Nevada Unfair Claims Practices Act.
 

 At the conclusion of trial, the jury returned a verdict in favor of Bartgis on all claims, awarding her $8,757.75 in contract damages and $275,000.00 in non-economic compensatory damages for emotional distress. One day later, the jury assessed punitive damages against Allianz and Wohlers in the amounts of $7,500,000.00 and $500,000.00, respectively. Judgment was entered on May 19, 1995.
 

 Allianz and Wohlers now appeal, and Bartgis cross-appeals. For the reasons set forth below, we affirm the jury’s verdict in most respects. We conclude, however, that the district court erred in entering judgment against Wohlers based on the Unfair Claims Practices Act. Additionally, we hold that the punitive damages assessed against Allianz and Wohlers were excessive, and that the district court erred in denying Bartgis post-judgment interest on the punitive damages awards.
 

 FACTS
 

 Bartgis is a court reporter who has been a member of the National Shorthand Reporters Association (NSRA) since 1973. She worked as an employee of a Nevada court-reporting business from 1973 to 1983, and then formed a partnership with a colleague. After forming the partnership, Bartgis obtained a medical insurance policy through NSRA. The medical insurance policies offered by NSRA to its members were underwritten by Mutual of New York (MONY), and were administered by Wohlers.
 

 On September 24, 1990, MONY informed Wohlers by letter that it planned to increase the cost of premiums by fifty-five percent effective November 15, 1990. Wohlers contacted several other major medical insurance underwriters in an attempt to secure a medical insurance policy for NSRA before MONY’s premium hike went into effect. One of the underwriters Wohlers contacted was Allianz, with whom Wohlers had enjoyed a long-term business relationship.
 

 After initially refusing Wohlers’s proposal, Allianz agreed to underwrite the policy at the same monthly premium, but with additional significant internal cost limitations. The agreement between Allianz and Wohlers provided Wohlers with substantial administrative and claims management responsibilities. For. example, the agreement provided that Wohlers would administer the policy, share in a percentage of the premiums paid, and share in Allianz’s profits that were realized from Wohlers’s efforts to keep claim costs down. Thus, Wohlers had a direct pecuniary interest in minimizing claim costs.
 

 
 *1254
 
 During their November 1990 negotiations, Wohlers and Allianz agreed to insert a new cost limitation on ancillary charges into the NSRA policy. Significantly, this “ancillary charges” cost limitation provision had not been included as a provision in NSRA’s prior policy with MONY. Allianz’s policy with NSRA defined the term “ancillary charges” as “a service or supply that is furnished by a Hospital or Extended Care Facility when a Member or Insured Dependent is Confined.”
 

 The maximum benefit for ancillary charges under the Allianz policy applied to a patient’s confinement in a hospital and was computed as “the Daily Room Rate [multiplied by] the number of days of confinement [multiplied by] 2.” Hospital confinement, for purposes of the Allianz policy, was defined as ‘ ‘confinement as a Registered Bed-Patient in a Hospital upon the advice of a Physician for a period of twenty-four (24) hours or longer and such confinement is for purposes other than convalescence or rehabilitation.’ ’
 

 In November 1990, Wohlers informed Bartgis by letter that Allianz would now serve as her medical insurance policy underwriter because MONY had planned to raise its premiums by an unacceptable fifty-five percent. In its letter, Wohlers stated that Allianz had agreed to “continue this coverage offering comparable benefits without an increase in premiums,” effective November 15, 1990. The letter specified that premiums were guaranteed until February 15, 1991, and assured plan participants that the “new NSRA plan [had] been carefully designed to [provide] the needed health care insurance protection at an affordable price.’ ’
 

 Wohlers concluded its letter by encouraging all plan participants to compare the prior MONY policy benefits and coverage with those of the new Allianz policy. The policy outlines included information about deductibles and maximum coverage under the old MONY policy and the new Allianz policy. Under the new policy, Allianz would pay eighty percent of Bartgis’ allowable hospital expenses up to $5,000.00. After expenses reached that amount, Allianz would pay one hundred percent. Significantly, the policy outlines did not notify plan participants of the new “ancillary charges” cost limitation provision that had been inserted into the Allianz policy, nor did the comparison outlines mention the provision or explain its intended effect. The letter was signed by Wohlers’s executive vice-president James R. Malik.
 

 Bartgis read both the letter and policy outlines in order to determine what changes had been made to her coverage. After comparing the details on the outlines, she concluded that the Allianz policy provided better coverage than her previous MONY policy. Bartgis did not read anything indicating limitations on ancillary charges.
 

 
 *1255
 
 On December 11, 1990, Allianz and Wohlers reviewed and accepted a final draft of the policy that contained the ancillary charges limitation provision. In January 1991, Wohlers sent a second letter to all NSRA members explaining the change of underwriters and providing policyholders with an insurance certificate. Bartgis read the letter, which again made no mention of the new ancillary charges limitation provision. Although the new ancillary charges limitation provision was noted in the policy certificate, there was no accompanying explanation that this provision represented a significant deviation in benefits when compared to NSRA’s previous policy with MONY.
 

 In 1991, Bartgis was diagnosed with pre-cancerous cells in her reproductive organs. On April 15, 1991, she underwent a cone biopsy, and the treating physicians removed the diseased cells. Following the half-day procedure, which was performed in a hospital, Bartgis filed a claim pursuant to her Allianz medical insurance policy. In accordance with the policy provisions outlined in the November 1990 letter from Wohlers, Allianz paid eighty percent of the medical bill, and Bartgis paid twenty percent.
 

 Four weeks later, Bartgis experienced a medical emergency that required her to be taken to the emergency room of a local hospital. Bartgis again properly filed another claim with Allianz, and Allianz paid fifty percent of the bill, which was the coverage percentage for emergency room visits outlined in the November 1990 letter.
 

 Bartgis’ discomfort grew steadily, as did her consumption of estrogen and prescription medications in an effort to manage her pain and avoid surgery. Finally, after being told she could no longer take the hormone pills, Bartgis decided, per the recommendation of her physician, to undergo a total hysterectomy. She then perused the Allianz policy in order to determine the applicable coverage rate for the procedure. Her policy listed the procedure as an “elective” procedure, which meant that she would have to pay an additional $200.00 toward her deductible. Bartgis followed the pre-certification procedures required under the policy and obtained certification for a twenty-four hour stay. Based on her understanding of the policy, Bartgis believed that she would only incur an additional $500.00 charge in the event that her hospitalization exceeded twenty-four hours.
 

 The surgery was performed on December 29, 1992. As before, Bartgis assumed that Allianz would pay eighty percent of her medical expenses up to $5,000.00, and one hundred percent thereafter. Although Bartgis had only obtained certification for a twenty-four hour stay, she was hospitalized for approximately twenty-seven hours, including check-in and check-out time.
 

 On Saturday, January 23, 1993, Bartgis received an explanation
 
 *1256
 
 of covered expenses from Wohlers. Several of the itemized charges were covered by Allianz at the percentages and rates outlined in the November 1990 letter from Wohlers. However, the majority of the bill — $9,328.75—was listed under a lump-sum charge of which Allianz covered only $930.00. The corresponding explanation code on the document identified the $9,328.75 as “ancillary charges.” The detailed listing of charges from the hospital also revealed that Allianz had deemed all medical expenses beyond basic room and board as “ancillary charges.”
 

 Thus, Allianz categorized the expenses for Bartgis’ operating room ($2,708.98), recovery room ($390.60), sutures and staples ($2,286.63), heart monitor ($103.80), anesthesia and anesthesia system ($401.70), and numerous other charges, as “ancillary” for coverage purposes. Accordingly, Allianz agreed to cover only ten percent of these “ancillary” medical expenses.
 

 Upon receipt of the letter, Bartgis became extremely upset and frustrated. On Monday, January 25, 1993, Bartgis contacted Wohlers for an explanation as to why Allianz would only cover ten percent of the major medical expenses listed on her hospital bill. Delores Pricener, a Wohlers representative, explained that because Bartgis’ hospitalization had exceeded twenty-four hours, Bartgis was classified as an in-patient and that such classification triggered the ancillary charges limitation provision in her policy. Pricener explained that when the ancillary charges limitation was in effect, essentially all charges from the hospital except for basic room and board were subject to the ancillary charges limitation provision contained in Bartgis’ policy.
 

 Bartgis then sought the assistance of her friend and attorney, Margaret Manes. Manes reviewed the policy and also concluded that Wohlers had erred. Manes called Pricener, who provided Manes with the same explanation for denying the claim that she had given to Bartgis. When Manes requested to speak to a supervisor, Manes was required to fax a letter of legal representation before anyone would speak with her. Manes faxed a letter of representation to Pricener at Wohlers’s office.
 

 Subsequently, Manes received a letter from Wohlers explaining that because Bartgis’ stay in the hospital had exceeded twenty-four hours, the ancillary charges limitation provision in Bartgis’ policy had been triggered. Distraught, Bartgis attempted to obtain a major medical insurance plan through another carrier but was unsuccessful because of her pre-existing medical condition. Throughout this period, Bartgis became further upset, losing sleep and her appetite. During the following three months, she developed two bladder infections and an upper-respiratory infection, suffered dramatic weight loss, and felt “generally terrible.”
 

 On July 15, 1993, Bartgis filed a civil complaint against
 
 *1257
 
 Allianz and Wohlers alleging breach of contract, fraud, bad faith, and violations of the Nevada Unfair Claims Practices Act. Bartgis sought both compensatory and punitive damages. After Bartgis filed her complaint, Allianz offered to pay the entire amount in dispute from the hospital bill, plus attorney’s fees, in return for Bartgis’ relinquishment of her claims for fraud and bad faith. Bartgis refused.
 

 At trial, the jury returned a verdict in favor of Bartgis and against Allianz and Wohlers on all claims: (1) $8,757.75 in contract damages; (2) $275,000.00 in non-economic compensatory damages for emotional distress; and (3) that both Allianz and Wohlers were subject to punitive damages.
 

 Following the punitive damage phase of the trial, the jury assessed exemplary damages in the amounts of $500,000.00 and $7,500,000.00 against Wohlers - and Allianz respectively. Judgment was entered on May 19, 1995. Wohlers and Allianz now appeal, and Bartgis cross-appeals with respect to the district court’s failure to award post-judgment interest on the punitive damage awards.
 
 [1]
 

 DISCUSSION
 

 The jury’s finding of bad faith is supported by substantial evidence
 

 Allianz first contends that there is insufficient evidence to support the jury’s finding of bad faith because it had reasonable grounds upon which to deny making full payment on Bartgis’ claim. Specifically, Allianz asserts that based on the language of the ancillary charges limitation provision, a genuine issue existed as to its obligation under Bartgis’ policy which, in turn, obviates its bad faith liability for failure to pay Bartgis’ claim.
 
 [2]
 
 We disagree.
 

 
 *1258
 
 It is well settled in Nevada that "every contract imposes upor the contracting parties the duty of good faith and fair dealing. Hilton Hotels v. Butch Lewis Productions, 109 Nev. 1043, 1046, 862 P.2d 1207, 1209 (1993). As we explained in Ainsworth v. Combined Insurance Co., 104 Nev. 587, 592, 763 P.2d 673, 676 (1988), "[t]he relationship of an insured to an insurer is one ol special confidence.
 
 [3]
 
 A consumer buys insurance for security, protection, and peace of mind." (Footnote added.) While an insurec assumes various duties under an insurance contract-such as thc timely payment of premiums-the insurer assumes the concomitant duty "to negotiate with its insureds in good faith and to dea with them f2irlv" 1d
 

 “Bad faith is established where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct.” Guaranty Nat’l Ins. Co. v. Potter, 112 Nev. 199, 206, 912 P.2d 267, 272 (1996). In reviewing a determination of bad faith, this court “will not disturb a trial court’s findings of fact unless they are clearly erroneous and not based on substantial evidence.”
 
 Id.
 

 In Sparks v. Republic National Life Insurance Co., 647 P.2d 1127, 1137 (Ariz. 1982), the Arizona Supreme Court faced a similar situation wherein the defendant insurance company asserted that the evidence was insufficient to support a finding of bad faith because its obligation under the insurance contract was “ ‘fairly debatable.’ ’ ’ In
 
 Sparks,
 
 the insureds suffered catastrophic injuries in a small plane crash while their health insurance policy was in effect.
 
 Id.
 
 at 1131. Subsequently, after the insured’s small business went bankrupt due to their debilitating injuries and inability to work, the insurer terminated their health insurance policy for underpayment and denied them any further medical benefits for injuries sustained while their policy had been in force.
 
 Id.
 

 
 *1259
 
 In rejecting the insurance company’s argument that its obligation pursuant to the policy was debatable due to a certain policy provision, and in concluding that substantial evidence supported the giving of the bad faith instruction, the
 
 Sparks
 
 court held:
 

 We disagree with the [insurance company’s] contention that an insurer’s belief that a portion of its insurance contract precludes coverage raises an absolute defense to a claim of bad faith. If the insurer’s interpretation of its own contract as excluding coverage could render an insured’s claim “fairly debatable,” then insurers would be encouraged to write ambiguous insurance contracts, secure in the knowledge that an obscure portion of the policy would provide an absolute defense to a claim of bad faith. Although the insurer’s belief that the validity of the insured’s claim was fairly debatable is a defense to a charge of bad faith, such a belief is a question of fact to be determined by the jury.
 

 Id.
 
 at 1137.
 

 In similar fashion, we reject Allianz’s assertion that its interpretation of the ancillary charges limitation provision in Bartgis’ policy provided reasonable grounds upon which to deny Bartgis’ claim, thereby sheltering it from bad faith liability. To the contrary, substantial evidence was presented to the jury from which it could have concluded that Allianz and Wohlers had engaged in bad faith.
 

 Specifically, the jury heard evidence of the November 1990 letter from Wohiers to Bartgis, which had been pre-approved by Allianz, that made no mention of the harsh ancillary charges limitation provision. Further, the evidence adduced at trial established that in the same letter, Allianz and Wohiers made the significant misrepresentation that the new Allianz policy contained comparable benefits with Bartgis' previous MONY policy, a poi-icy which did not contain the ancillary charges limitation provision. Additionally, the jury heard evidence that the defendants continued to conceal the ancillary charges limitation provision in subsequent communications to Bartgis. Finally, the evidence presented at trial established that by way of Allianz's and Wohiers's tortured interpretation of the arcane ancillary charges limitation provision, Bartgis' policy-which Allianz and Wohiers had ostensibly represented as a comprehensive major medical insurance policy-covered only hospital room and board. By interpreting the policy in a manner that denied coverage for all medically necessary procedures and expenses such as the operating and recovery room expenses, anesthesia, all medications, sutures, and roughly ninety percent of Bartgis' hospital bill, Allianz and Wohlers
 
 *1260
 
 deprived Bartgis of the peace of mind and security for which she had bargained.
 

 Based on these facts, we conclude that Allianz’s failure to inform Bartgis of the significant reduction in coverage, its representation that coverage under the two policies was comparable, its absurd interpretation of the ancillary charges limitation provision, and its denial of Bartgis’ claim pursuant to that provision, were unreasonable. Accordingly, we conclude that the jury’s finding of bad faith is supported by substantial evidence.
 

 The jury’s finding of fraud is supported by substantial evidence
 

 Allianz and Wohlers argue that Bartgis failed as a matter of law to prove the elements of her fraud claim. Specifically, Allianz contends that it never made or intended any misrepresentation, and that Bartgis failed to prove that she relied on any of Allianz’s representations. We disagree.
 

 As an initial matter, Allianz and Wohlers assert that the jury instruction defining clear and convincing evidence, upon which the jury predicated its finding of both fraud and punitive damages, was erroneous.
 
 [4]
 
 Specifically, they assert that the definition provided by the district court offered little guidance to the jury as to the meaning of the clear and convincing evidence standard. We disagree.
 

 In Addington v. Texas, 441 U.S. 418, 432-33 (1979), the Supreme Court explained that in order to satisfy due process, instructions on the clear and convincing standard need only “inform the factfinder that the proof must be greater than the preponderance-of-the-evidence standard applicable to other categories of civil cases.” Consistent with this teaching, in Topaz Mutual Co. v. Marsh, 108 Nev. 845, 850-51, 839 P.2d 606, 610 (1992), we concluded that the identical clear and convincing instruction at issue in the present case was sufficient to ameliorate an otherwise erroneous instruction that suggested that damages for fraud could be established by a preponderance of the evidence. Accordingly, we conclude that the clear and convincing evidence instruction used in this case was sufficient, and that the district court did not err in so instructing the jury.
 

 Turning to the substance of Allianz’s and Wohlers’s fraud argument, we have previously held that fraud must be proven by clear and convincing evidence as to each of the following elements: (1) a false representation made by the defendant; (2) defendant’s
 
 *1261
 
 knowledge or belief that the representation is false (or insufficient basis for making the representation); (3) defendant’s intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; (4) plaintiff’s justifiable reliance upon the misrepresentation; and (5) damage to the plaintiff resulting from such reliance. Bulbman, Inc. v. Nevada Bell, 108 Nev. 105, 111, 825 P.2d 588, 592 (1992).
 

 Further, this court “will not overturn the jury’s verdict if it is supported by substantial evidence, unless, from all the evidence presented, the verdict was clearly wrong.” Bally’s Employees’ Credit Union v. Wallen, 105 Nev. 553, 555-56, 779 P.2d 956, 957 (1989). The reviewing court “must assume that the jury believed the evidence favorable to [the prevailing party] and made all reasonable inferences in [that party’s] favor.”
 
 Id.,
 
 105 Nev. at 555, 779 P.2d at 957.
 

 Here, by way of Wohlers’s November 1990 and January 1991 letters to Bartgis, which concealed the ancillary charges limitation provision and which misrepresented the Allianz policy as being comparable to Bartgis’ previous MONY policy, the jury could have concluded that Wohlers and Allianz had deliberately misrepresented the policy and had concealed the ancillary charges limitation in order to induce Bartgis’ enrollment in the policy.
 

 In assuming that the jury believed the foregoing evidence in favor of Bartgis, and made all reasonable inferences from such evidence in her favor, we conclude that the jury could have found that Allianz and Wohlers were liable for fraud. Accordingly, we conclude that the jury’s finding of fraud is supported by substantial evidence.
 

 The compensatory damage award is not excessive
 

 At the conclusion of trial, the jury awarded Bartgis $275,000.00 in non-economic compensatory damages for emotional distress. On appeal, Allianz and Wohlers assert that the evidence presented at trial was insufficient to support the jury’s finding that Bartgis suffered compensable emotional harm and that the jury’s award was excessive. We disagree.
 

 It is well established that this court “will affirm an award of compensatory damages unless the award is so excessive that it appears to have been ‘given under the influence of passion or prejudice.’” Guaranty Nat’l Ins. Co. v. Potter, 112 Nev. 199, 206, 912 P.2d 267, 272 (1996) (quoting NRCP 59(a)(6)). “The size of the award alone is not conclusive evidence that it was the result of passion or prejudice.”
 
 Id.
 
 at 207, 912 P.2d at 272. “Rather, ‘the core of the matter seems to be that an appellate court will
 
 *1262
 
 disallow or reduce the award if its judicial conscience is shocked.’”
 
 Id.
 
 (quoting Miller v. Schnitzer, 78 Nev. 301, 309, 371 P.2d 824, 829 (1962)).
 

 Based on our review of the record on appeal, we conclude that the amount of Bartgis’ compensatory damages award was not the product of passion or prejudice. Evidence presented during trial established that as a result of appellant’s fraudulent misrepresentations, concealment, and bad faith course of conduct, Bartgis was deprived of her peace of mind and sense of security during a postoperative and vulnerable juncture of her life. Throughout this period, evidence presented at trial indicated that Bartgis suffered numerous stress-related bladder infections, loss of appetite, and loss of sleep. Further, the jury heard evidence of Bartgis’ dramatic weight loss of approximately seventeen pounds from the time that Wohlers denied her claim until the time of trial. Bartgis testified as to the nature of these ailments, along with her anxiety and financial hardship. Although Allianz offered to pay the disputed amount plus attorney’s fees shortly after these proceedings were commenced, the award is still not so excessive or without basis as to require reduction or elimination on appeal.
 

 The district court did not err in finding that Wohlers was contractually obligated on an insurance policy between Bartgis and Allianz
 

 The jury in this case found that Wohlers and/or Allianz had “breached its contractual obligations to [Bartgis].” Wohlers argues that because it was not a party to the insurance contract between Bartgis and Allianz, it could not be held liable for any policy-based contractual claims or bad faith claims emanating from a breach of the duty of good faith and fair dealing. In response, Bartgis asserts that as a full service administrator that shared in Allianz’s profits, Wohlers was contractually obligated to her by way of the medical insurance policy. We agree.
 

 In general, no one “is liable upon a contract except those who are parties to it.” County of Clark v. Bonanza No. 1, 96 Nev. 643, 648-49, 615 P.2d 939, 943 (1980). However, according to a well-established exception to this general rule, where a claims administrator is engaged in a joint venture with an insurer, the administrator “may be held liable for its bad faith in handling the insured’s claim, even though the organization is not technically a party to the insurance policy.” William M. Shernoff, et al.,
 
 Insurance Bad Faith Litigation
 
 § 2.03[1], at 2-10 (1998).
 

 Pursuant to this generally recognized exception, in Farr v. Transamerica Occidental Life Insurance Co., 699 P.2d 376, 386
 
 *1263
 
 (Ariz. Ct. App. 1984), the Arizona Court of Appeals concluded that an insurance administrator was sufficiently involved in a joint venture with the insurer to expose it to bad faith liability based on evidence that the administrator collected premiums, handled claims, and received a commission on collected premiums and a percentage of renewal commissions.
 

 In the instant case, and in similar fashion, we conclude that the evidence sufficiently established that Wohlers and Allianz were involved in a joint venture to an extent sufficient to expose Wohlers to all policy-based contractual claims and bad faith liability. Here, the evidence proffered at trial indicated that Wohlers developed promotional material, issued policies, billed and collected premiums, paid and adjudicated claims, and assisted Allianz in the development of the ancillary charges limitation provision. Further, because Wohlers shared in Allianz’s profits, it had a direct pecuniary interest in optimizing Allianz’s financial condition by keeping claims costs down. Indeed, Wohlers’s administrative responsibilities and its special relationship with Allianz are more indicative of the existence of a joint venture than the situation presented in
 
 Farr.
 

 Due to the extent of Wohlers’s administrative responsibilities, policy management duties, and special relationship with Allianz, we conclude that Wohlers and Allianz were involved in a joint venture to an extent sufficient to expose Wohlers to liability on all contract-based and bad faith claims.
 

 The district court erred in finding that Wohlers was liable under NRS 686A.310
 

 Wohlers asserts that it is not an insurer within the meaning of the applicable statutory definition and, thus, it cannot be held liable for alleged unfair claims practices proscribed under NRS 686A.310 because the statute applies only to insurance companies. We agree.
 

 We have previously held that in determining what the legislature intended, the title of a statute may be considered in construing the statute. A Minor v. Clark Co. Juvenile Ct. Servs., 87 Nev. 544, 548, 490 P.2d 1248, 1250 (1971). The title of NRS 686A.310 reads “Unfair practices in settling claims;
 
 liability of insurer
 
 for damages.” (Emphasis added.) From a plain reading of its title, there is no indication that the legislature intended NRS 686A.310 to apply to other entities beyond insurers.
 

 At trial, Bartgis relied on NRS 686A.520 for the assertion that
 
 *1264
 
 Wohlers was an “insurer” for purposes of NRS 686A.310. NRS 686A.520 provides, in relevant part:
 

 1. The provisions of . . . NRS 686A.010 to 686A.310, inclusive, apply to companies.
 

 2. For the purposes of subsection 1,
 
 unless the context requires that a section apply only to insurers,
 
 any reference in those sections to “insurer” must be replaced by a reference to “company.”
 

 (Emphasis added.) The term “company” is defined as a person engaged in the business of entering into “agreements.” NRS 686A.330(2). The term “agreement” is defined as a contract under which a person agrees to pay an insurance premium in advance, on behalf of the insured or the prospective insured, in exchange for some consideration such as repayment with interest. NRS 686A.330. After a thorough review of the record, we conclude that no evidence exists that indicates Wohlers financed or paid premiums on behalf of Bartgis.
 

 Further, despite the fact that the title of NRS 686A.310 clearly states that the following provisions apply to the liability of insurers, the district court instructed the jury that NRS 686A.310 applied to “one or both defendants.” Based on the foregoing reasoning, we conclude that NRS 686A.310 does not apply to Wohlers because it is not an insurer or company within the meaning of the applicable statutory law. Therefore, the district court erred in applying the provisions of NRS 686A.310 to Wohlers.
 

 In the alternative, Bartgis asserts that NRS 686A.020 brings Wohlers within the ambit of liability under NRS 686A.310. This argument is not persuasive. NRS 686A.020 provides, in relevant part, that:
 

 A person shall not engage in this state in any practice which is defined in NRS 686A.010 to 686A.310, inclusive, as, or determined pursuant to NRS 686A.170 to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance.
 

 Bartgis asserts that this section applies to Wohlers because Wohlers is a person within the meaning of the statute. Although “person” is not defined in this particular section, NRS 0.039 defines “person,” in relevant part, as “a natural person, any form of business or social organization and any other nongovernmental legal entity including, but not limited to, a corporation, partnership, association, trust or unincorporated organization.”
 

 Admittedly, Wohlers comes within the NRS 0.039 definition of person. However, when considering unfair claims practices, the
 
 *1265
 
 jury found Wohlers liable for violating NRS 686A.310, which expressly proscribes unfair practices in settling claims by an insurer, which Wohlers is not. We are not willing to expand the definition of “insurer” and “company” beyond that which has been provided by the legislature and, thus, we reject Bartgis’ assertions that Wohlers’s actions constituted a violation of NRS 686A.310. Accordingly, we reverse the jury’s determination that Wohlers was liable for violating NRS 686A.310.
 

 Our reversal of Wohlers’s NRS 686A.310 liability in no way compromises our affirmance of Wohlers’s liability on all contract-based, fraud, and bad faith claims.
 
 [5]
 
 Notwithstanding our determination that Wohlers is not an insurer within the ambit of NRS 686A.310, Wohlers may still be held liable for all common law contract and bad faith claims and punitive damages. In general, the majority rule maintains that a defendant’s liability or exoneration pursuant to an unfair claims statutory scheme “does not preclude a common-law tort cause of action for bad faith.” William M. Shernoff, et al.,
 
 Insurance Bad Faith Litigation
 
 § 6.04[3], at 6-39 (1998). Recognizing the validity of the majority rule, Wohlers concedes that a reversal of its NRS 686A.310 liability would not, in turn, insulate it from punitive damages stemming from any of Bartgis’ other claims. Accordingly, our reversal of Wohlers’s NRS 686A.310 liability does not jeopardize our affirmance of the jury’s finding of Wohlers’s liability on all common law contract-based claims, fraud, and bad faith.
 

 The district court did not err in finding that Allianz violated NRS 686A.310
 

 Allianz argues that Bartgis failed to set forth the essential elements necessary to show a violation of the Nevada Unfair Claims Practices Act. We disagree.
 

 The district court instructed the jury regarding seven unfair practices set forth in NRS 686A.310.
 
 [6]
 
 At the conclusion of trial,
 
 *1266
 
 the jury determined that Allianz and Wohlers had engaged in unfair claims practices.
 

 Based on our review of the record, we conclude that the jury’s verdict that Allianz engaged in one or more unfair claims practices is supported by substantial evidence. As previously indicated, the jury heard evidence indicating that in the Allianz-approved November 1990 and January 1991 letters to Bartgis, the Allianz policy was misrepresented as being “comparable” to Bartgis’ previous MONY policy. Further, the evidence suggested that Allianz had unilaterally inserted the arcane ancillary charges limitation provision into Bartgis’ policy and then failed to disclose this provision or explain its intended effect. Additionally, the jury heard evidence indicating that Allianz had acted unreasonably in denying her claim through its absurd interpretation of the ancillary charges limitation provision. The jury also heard evidence of Allianz’s failure to offer Bartgis a reasonable explanation, on the basis of her policy, for the denial of her claim.
 

 Based on these facts, we conclude that the jury’s finding that Allianz violated provisions of NRS 686A.310 is supported by substantial evidence.
 

 The punitive damages assessments are excessive as a matter of law
 

 At the conclusion of trial, the jury assessed $7,500,000.00 in punitive damages against Allianz and $500,000.00 against
 
 *1267
 
 Wohlers. On appeal, Allianz and Wohlers argue that the jury’s assessment of $8,000,000.00 in punitive damages was excessive. Although we conclude that substantial evidence exists to support the jury’s finding of fraud and bad faith necessary to justify an assessment of punitive damages, the respective punitive damage amounts assessed against both Allianz and Wohlers are excessive as a matter of state law.
 
 [7]
 

 NRS 42.005 provides that punitive damages may be awarded “in an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied.’ ’ When a prevailing plaintiff’s compensatory damages exceeds $100,000.00, punitive damages are capped by statute to three times the amount of the compensatory damages.
 
 See
 
 NRS 42.005(l)(a). When the plaintiff recovers less than $100,000.00 in compensatory damages, punitive damages must be limited to a maximum of $300,000.00.
 
 See
 
 NRS 42.005(b). Significantly, the foregoing statutory caps on punitive damages do not apply to “[a]n insurer who acts in bad faith regarding its obligations to provide insurance coverage.” NRS 42.005(2)(b).
 

 In Guaranty National Insurance Co. v. Potter, 112 Nev. 199, 208, 912 P.2d 267, 273 (1996), we reiterated the following standard for reviewing the excessiveness of a punitive damages award:
 

 Punitive damages are legally excessive when the amount of damages awarded is
 
 clearly
 
 disproportionate to the degree of blameworthiness and harmfulness inherent in the oppressive, fraudulent or malicious misconduct of the tortfeasor under the circumstances of a given case. If the awarding jury or judge assesses more in punitive damages than is reasonably necessary and fairly deserved in order to punish the offender and deter others from similar conduct, then the award must be set aside as excessive.
 

 (quoting Ace Truck v. Kahn, 103 Nev. 503, 509, 746 P.2d 132, 136-37 (1987)). In determining whether a punitive damages award is excessive pursuant to this standard, we will consider a variety of factors including “the financial position of the defendant, culpability and blameworthiness of the tortfeasor, vulnerability and injury suffered by the offended party, the extent to which the punished conduct offends the public’s sense of justice and propriety,
 
 *1268
 
 and the means which are judged necessary to deter future misconduct of this kind.
 
 Id.
 
 at 208, 912 P.2d at 273-74 (quoting Ace Truck v. Kahn, 103 Nev. 503, 510, 746 P.2d 132, 137 (1987)).
 

 Based on the standard we reiterated in
 
 Guaranty National Insurance Co.,
 
 we conclude that the jury’s respective punitive damage assessments against Allianz and Wohlers are excessive as a matter of law. From the facts of this case, we conclude that these awards are clearly disproportionate to the degree of reprehensibility of Allianz’s and Wohlers’s conduct. Evidence presented at trial indicated that Allianz attempted to settle the case by offering to pay the full amount of Bartgis’ claim and all of her attorney’s fees after learning of her dispute over the ancillary charges limitation provision. Additionally, Allianz and Wohlers presented evidence indicating that of the small percentage of claimants who were affected by the ancillary charges limitation provision, numerous claims were resolved in favor of the policyholders at the completion of Allianz’s internal appeals process.
 

 Moreover, although the jury heard evidence attesting to Allianz’s and Wohlers’s fraudulent conduct and bad faith, the assessment against Wohlers is nearly twenty-one percent of that company’s net worth.
 
 [8]
 
 While the facts of this case demonstrate that Wohlers engaged in fraudulent misrepresentation and bad faith conduct, we conclude that this assessment exceeds the deterrent effect intended by an award of punitive damages.
 

 In similar fashion, the facts presented at trial demonstrated that Allianz had engaged in fraudulent misrepresentation and bad faith conduct. However, while the assessment against Allianz amounts to merely two and one-half percent of that company’s $300,000,000.00 net worth, we conclude that Allianz’s conduct in this case does not justify a punitive damage assessment that is approximately thirty times greater than Bartgis’ award of $275,000.00 in compensatory damages.
 

 Based on the foregoing, we conclude that the jury’s punitive damage assessments against Allianz and Wohlers are excessive and disproportionate to their degree of blameworthiness. The respective punitive damage awards assessed by the jury in this case exceed the punishment and deterrent effect intended by an award of punitive damages. Accordingly, the jury’s punitive damage assessment against Allianz is reduced from $7,500,000.00 to
 
 *1269
 
 $3,750,000.00, and the punitive damage assessment against Wohlers is reduced from $500,000.00 to $150,000.00.
 

 Bartgis is entitled to post-judgment interest on punitive damages
 

 In her cross-appeal, Bartgis argues that the district court erred in denying her motion for post-judgment interest on the punitive damage award pursuant to NRS 17.130.
 
 [9]
 
 We agree.
 

 Although Allianz and Wohlers assert that Bartgis is not entitled to post-judgment interest on punitive damages pursuant to our decision in Ainsworth v. Combined Ins. Co., 105 Nev. 237, 244, 774 P.2d 1003, 1009 (1989)(concluding that an award of post-judgment interest on punitive damages would not further the underlying purposes and policies of punitive damages), we have recently modified our
 
 Ainsworth
 
 decision.
 

 In Powers v. USAA, 114 Nev. 690, 962 P.2d 596 (1998), we held that NRS 17.130 allowed for post-judgment interest on punitive damages on the reasoning that such damages comprise part of a prevailing plaintiff’s judgment as defined by NRS 17.130.
 
 Id.
 
 at 19-20. In concluding that NRS 17.130 allowed for post-judgment interest on punitive damages, and in modifying our
 
 Ainsworth
 
 decision, we explained that “[t]he purpose of post-judgment interest is to compensate the plaintiff for loss of the use of the money awarded in the judgment ‘without regard to the elements of which that judgment is composed.’”
 
 Id.
 
 at 19 (quoting Air Separation v. Lloyd’s of London, 45 F.3d 288, 290 (9th Cir. 1973)).
 

 Accordingly, pursuant to our decision in Powers, Bartgis is entitled to post-judgment interest on her punitive damage award.
 
 [10]
 

 
 *1270
 

 CONCLUSION
 

 We conclude that substantial evidence supports the jury’s finding of bad faith and fraud against both Allianz and Wohlers. Further, we conclude that the compensatory damage award was not excessive, and, due to the existence of a joint venture between Wohlers and Allianz, that the district court did not err in finding that Wohlers was contractually obligated on Bartgis’ insurance policy.
 

 Likewise, we conclude that substantial evidence supports the jury’s finding that Allianz engaged in unfair claims practices proscribed by NRS 686A.310. However, because Wohlers is not an insurer within the meaning of the applicable statutory definition, we reverse Wohlers’s NRS 686A.310 liability. Lastly, we conclude that the punitive damages assessed against both Allianz and Wohlers are excessive as a matter of law, and that the district court erred in denying Bartgis post-judgment interest on the punitive damage award.
 

 Based on the foregoing, the punitive damage assessment against Allianz is reduced from $7,500,000.00 to $3,750,000.00, and the punitive damage assessment against Wohlers is reduced from $500,000.00 to $150,000.00. Accordingly, we remand this case solely for a determination of post-judgment interest on the modified punitive damage award as of the date the judgment was entered.
 

 [1]
 

 We note that counsel for appellants herein did not represent appellants in the district court proceedings.
 

 [2]
 

 Allianz and Wohlers make two other challenges to Bartgis’ favorable bad faith verdict. First, they contend that the jury’s bad faith and fraud verdicts are “fatally inconsistent” because if they had fraudulently misrepresented the amount of coverage under the policy by informing Bartgis that the policy afforded more coverage than in fact it did, then they could not be held liable for bad faith failure to pay a claim. Conversely, “if the policy did cover the full amount of plaintiff’s claim, then nothing was concealed from [Bartgis] and there was no fraud or actionable nondisclosure.” We reject this argument. It is preposterous to suggest that an insurer’s fraudulent acts could, in turn, insulate it from bad faith liability and vice versa. Rather, from the evidence adduced at trial, the jury could have found that appellants’/cross-respondents’ fraudulent actions constituted a breach of the duty of good faith and fair dealing, thereby exposing them to bad faith liability. Likewise, we see no inherent inconsistencies in the jury’s verdict.
 

 Secondly, Allianz and Wohlers assert that the district court’s inability to find as a matter of law that Bartgis was entitled to full payment of her claim
 
 *1258
 
 pursuant to her policy “demonstrates ... the unsoundness of her bad faith claim.” This argument is not persuasive. Initially, we note that Bartgis did not move the district court for either summary judgment or a directed verdict. More importantly, although we recognize that some jurisdictions have adopted the directed verdict rule,
 
 see, e.g.,
 
 National Savings Life Ins. Co. v. Dutton, 419 So.2d 1357, 1362 (Ala. 1982) (explaining that in order to establish a prima facie case of bad faith, the plaintiff must proffer sufficient evidence demonstrating that the plaintiff is entitled to a directed verdict on the contract claim), the rule adhered to by a vast majority of jurisdictions is that a plaintiff need not establish that it is entitled to a directed verdict on the contract claim in order to establish a prima facie bad faith claim.
 
 See
 
 William M. Shernoff, et ah,
 
 Insurance Bad Faith Litigation
 
 § 5.02[3], at 5-21 (1998). We believe that the majority rule represents the more reasoned approach and, thus, we decline to adopt the directed verdict rule.
 

 [3]
 

 With regard to first party claims, we have determined this relationship to be “akin” but not ascending to a fiduciary relationship.
 

 [4]
 

 During trial, the district court instructed the jury that “[c]lear and convincing evidence is evidence which is beyond a mere preponderance of the evidence.”
 

 [5]
 

 Additionally, our reversal of Wohlers’s NRS 686A.310 liability in no way necessitates a new trial with respect to any of Bartgis’ remaining claims. While we acknowledge that when a jury returns a general verdict on multiple claims, and it is impossible to determine on which claims the jury predicated liability, an error on one or more of the claims necessitates a new trial.
 
 See, e.g.,
 
 Lightenburger v. Gordon, 81 Nev. 553, 407 P.2d 728 (1965). Here, however, the jury’s special verdict clearly indicates that the jury found Wohlers liable on all claims including contract, fraud, bad faith, and statutory unfair claims practices. Accordingly, our reversal of Wohlers’s NRS 686A.310 liability does not alter the jury’s finding of liability on Bartgis’ remaining claims.
 

 [6]
 

 The list of unfair practices included:
 

 
 *1266
 
 1. Misrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue;
 

 2. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under an insurance policy;
 

 3. Failing to effectuate prompt, fair and equitable settlements of a claim in which liability of the insurer has become reasonably clear;
 

 4. Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered;
 

 5. Attempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;
 

 6. Failing to settle claims promptly, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;
 

 7. Failing to provide promptly to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insureds’ claim and the applicable law, for the denial of her claim or for an offer to settle or compromise her claim.
 

 [7]
 

 We hold that the jury’s assessment of punitive damages is excessive solely as a matter of state law. Thus, we do not consider Allianz’s and Wohlers’s argument, premised on BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S. Ct. 1589 (1996), that the punitive damages awarded in this case are grossly excessive pursuant to the Fourteenth Amendment of the Federal Constitution.
 

 [8]
 

 During trial, the jury heard evidence indicating that Allianz’s net worth was $300,000,000.00 and Wohlers’s net worth was $2,435,000.00. Based on their respective net worth, the jury’s assessment of $7,500,000.00 in punitive damages against Allianz amounted to approximately two and one-half percent of its net worth, and the $500,000.00 punitive damage assessment against Wohlers amounted to approximately twenty-one percent of its net worth.
 

 [9]
 

 In relevant part, NRS 17.130 provides:
 

 1. In all judgments . . . rendered by any court of justice, for any debt, damages or costs ... the amount must be computed, as near as may be, in dollars and cents ....
 

 2. When no rate of interest is provided by contract or otherwise by law, or specified in the judgment, the judgment draws interest from the time of service of the summons and complaint until satisfied, except for any amount representing future damages, which draws interest only from the time of the entry of the judgment until satisfied ....
 

 [10]
 

 Although Bartgis purports to appeal from the district court’s order denying her post-judgment motion for post-judgment interest on the punitive damages, we conclude that this order is not an appealable special order after final judgment.
 
 See
 
 Wilkinson v. Wilkinson, 73 Nev. 143, 145, 311 P.2d 735, 736 (1957) (explaining that “[t]he mere fact that the order in point of time is made after a final judgment has been entered does not render it appealable. It must affect the rights of the parties growing out of final judgment”). Nevertheless, we construe Bartgis’ appeal as one from the final judgment, which failed to award her post-judgment interest on the punitive damages
 
 *1270
 
 award.
 
 See
 
 Foreman v. Eagle Thrifty Drugs & Markets, 89 Nev. 533, 536, 516 P.2d 1234, 1236 (1973).
 

 Additionally, Bartgis purports to appeal from the district court’s order denying her post-judgment motions for sanctions and discovery. We do not discern, however, how Bartgis was aggrieved with respect to these issues. Although Bartgis brought her post-judgment motion for sanctions and further discovery in the context of Wohlers and Allianz’s motion for a new trial, the district court denied the motion for a new trial. Therefore, it does not appear that Bartgis was aggrieved with respect to these post-judgment issues.
 
 See
 
 NRAP 3A(a)(only aggrieved party may appeal from an appealable order or judgment); City of Reno v. Harris, 111 Nev. 672, 676, 895 P.2d 663, 666 (1995) (noting that an aggrieved party is one whose property right or personal right is substantially or adversely affected by the order or judgment from which the appeal is taken). Consequently, we conclude that we lack jurisdiction to address these issues.